The People of the State of Illinois ex rel. Edward J. Barrett, Plaintiff, v. The West Side Trust and Savings Bank of Chicago, Defendant.
L. H. Heymann et al., Appellants, v. William L. O'Connell, Receiver, and Edward J. Barrett, Appellees.

Gen. No. 37,837.

Heard in the second division of this court for the first district at the October term, 1934.

Opinion filed May 24, 1935. Rehearing denied June 5, 1935.

JOHN M. LEE and CARL M. Loos, both of Chicago, for appellants.

THOMAS D. NASH and MICHAEL J. AHERN, both of Chicago, for certain appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

January 12, 1934, the auditor of public accounts appointed William L. O'Connell receiver of the West Side Trust and Savings Bank, pursuant to the power vested in him under section 11 of An Act to Revise the Law with Relation to Banks and Banking (ch. 16a, Cahill's Ill. Rev. Stat. 1933), and thereafter, on January 15, 1934, he filed a bill of complaint in the superior court of Cook county, alleging in substance that the capital stock of the bank had become impaired, that its business was being conducted in an unsafe manner, that a receiver had been appointed by him, and invoking the court's jurisdiction for the following specified purposes:

(1) That a hearing may be had and a decree entered finding that the capital stock of the bank had become irreparably impaired and to determine by its decree that it could not be reorganized and should be liquidated through a receivership.

(2) To find by its decree that the auditor of public accounts had designated William L. O'Connell, a reputable person as receiver of said bank, that he had

filed his bond for $10,000 as security for the faithful performance of his duties as required and was then in possession of the title to the banking house, furniture, fixtures, books, records and assets of said bank, for the purposes of the receivership.

(3) That the receiver may, upon filing proper petitions, be authorized and directed by the court, from time to time, to sell or compound all bad or doubtful debts due and owing said bank, to sell all real estate and personal property belonging to it, on such terms as the court might direct, to compromise claims and debts due and owing said bank whenever the best interests of creditors should so require, always subject to the approval of the court.

(4) That the receiver be authorized to present from time to time petitions to the court seeking its aid and direction with reference to various problems arising in the administration of the assets, property and estate of said bank.

(5) That the receiver be directed to present to the court, from time to time as required, a full and perfect inventory showing all assets, property and effects of said bank coming into his possession.

(6) That in case there be a remainder of the proceeds of the assets of said bank, after the payment of all claims previously proved or adjudicated, as required by law, and all the costs and expenses of the proceedings and receivership, said receiver be directed to report the amount of such remainder to the court for its further order and direction.

(7) That the receiver be directed to file with the clerk of the court, after collection and distribution of all the proceeds of the assets of said bank, an itemized report of all moneys received and disbursed by him.

(8) That the corporate existence of the bank may be terminated and dissolved, and

(9) That complainants and the receiver have such other and further relief in the premises as equity may require and to the court shall seem meet.

Simultaneously with the filing of the bill of complaint, the receiver entered his appearance in said cause.

Thereafter, on April 26, 1934, L. H. Heymann, John P. Hooker, Henry Isaacs, Nelson Morris and Max Blum, constituting a committee for the protection of the holders of certain mortgage bonds sold by the bank and organized pursuant to the provisions of a deposit agreement dated September 30, 1931, filed a petition in said cause setting forth, among other things, that each of the trust deeds securing the various issues of mortgage bonds sold by the bank contained the following provisions:

"The Trustee may at any time resign and discharge itself of and from the trusts hereby created by resignation in writing filed in the Recorder's office of the county or counties wherein the mortgaged property is located.

"In case the Trustee hereunder shall resign, be removed, or be dissolved or otherwise become incapable of acting hereunder, a successor or successors may be appointed by the holder or holders of a majority in amount of the bonds then outstanding hereunder, by an instrument or concurrent instruments in writing duly signed by them and recorded in the Recorder's office of the county or counties wherein the mortgaged property is located; or in case said bondholder or holders shall not appoint a new trustee or trustees hereunder, as aforesaid, within thirty days after any such vacancy shall occur, then the holder or holders of any one or more of said bonds may apply to any court in the county or counties wherein said mortgaged property, or any part thereof, is located, having general chancery jurisdiction, for the appointment of a

new trustee hereunder, upon such notice to such person or persons as the court may direct, or upon such notice as shall be in accordance with the statute or the rules of such court.''

The petition further alleged that section 11 of the Banking Act provides that "As soon as can be reasonably done, the receiver of the bank shall resign on behalf of the bank all trusteeships''; that several demands had been made upon the receiver of the bank and his attorneys for such resignation from the trusteeships under the various trust deeds, but except in a few instances, they had refused to resign. Petitioners prayed for leave to intervene and for an order ruling the receiver to resign from all trusteeships under which the West Side Trust and Savings Bank had been acting as trustee, within a short day to be fixed by the court. On that date the court entered an order granting the prayer of the petition, and requiring the trustee to resign within 30 days.

May 10, 1934, petitioners filed a second petition setting forth various provisions of the deposit agreement dated September 30, 1931, and alleging that pursuant to the terms of said agreement numerous bonds had been deposited with the West Side Trust and Savings Bank, as depositary; that petitioners had made demands upon the receiver and his attorneys for a list of the bondholders who had deposited their bonds under such agreement with the depositary, but that the receiver had refused to produce the list, and prayed for an order requiring the receiver (1) to deliver all bonds then on deposit to the American National Bank & Trust Company of Chicago, the successor depositary; (2) to deliver to the petitioners a list or lists setting forth as to each property upon which bonds had been deposited pursuant to said agreement (a) the loan number, (b) the location of the property, (c) the amount and bond number deposited, and (d) by whom

deposited, together with the address of the depositor. The court entered an order on May 10th granting the relief sought and ordering the receiver to furnish the desired information within a short day.

May 25, 1934, the receiver, with the concurrence of the attorney general, asked leave to file a motion to vacate said orders, which was predicated on the ground that the court lacked jurisdiction and that petitioners had no right to the relief granted. A hearing was had before the court, and June 14, 1934, a decree was entered, which was likewise concurred in by the attorney general, sustaining the motion and dismissing the intervening petitions for want of jurisdiction to entertain them.

The principal question presented for review is whether the auditor of public accounts and the receiver of a closed bank, appointed by him under the Illinois Banking Act, are subject to the jurisdiction of the court before whom the bank liquidation proceeding is pending, except as to those matters over which the court is given express supervisory powers by statute. The material portions of section 11 of the Banking Act, Cahill's St. ch. 16a, ¶ 11, are as follows:

". . . If the Auditor determines that the bank cannot be reorganized and that the same should be liquidated through receivership he shall appoint a receiver and require of him such bond and security as he deems proper. Such receiver, under the direction of the Auditor, shall take possession of, and for the purpose of the receivership, the title to, the books, records and assets of every description of such bank, and shall proceed to collect all debts, dues and claims belonging to it, and, upon the order of a court of record of the county in which said bank is located, may sell or compound all bad or doubtful debts, and on a like order may sell the real and personal property of such bank, on such terms as the court shall direct.

"Such receiver shall file with the Auditor of Public Accounts a copy of each report which he makes to the court, together with such other reports and records as the Auditor may require.

"Such receiver shall have authority to sue and defend in his own name with respect to the affairs, assets, claims, debts and choses in action of such bank. He shall also have the authority and it shall be his duty, under the direction of the Auditor, to surrender to customers of such banks their private papers and valuables left with said bank for safekeeping upon satisfactory proof of ownership. . . . He shall have the power and authority to redeem . . . collateral . . . whenever the Auditor deems it to the best interest of the creditors of said bank so to do, and to do such other things and take such other steps from time to time under the direction and approval of the Auditor as may reasonably appear to be necessary to conserve the trust estate and secure the best interests of the creditors of said bank.

"Such receiver may petition the Circuit Court of the county in which such bank is located or any judge thereof . . . for authority to borrow money and to pledge the assets of such bank as security therefor. . . .

"The Auditor . . . shall, upon appointing a receiver, cause notice to be given . . . calling on all persons who may have claims against such bank to present the same to such receiver and to make legal proof thereof, and in case the Auditor . . . has instituted suit or proceedings for the dissolution or winding up of the affairs of such bank in the Circuit Court of the county where the bank is located, such persons or the receiver to whom such persons have presented their claims may present the same to the clerk of such court and the allowance or disallowance of such claims by said court in connection with the said proceedings

shall be deemed an adjudication in a court of competent jurisdiction. . . .

"From time to time the Auditor . . . shall make a ratable dividend of the moneys collected by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction . . . and shall make further dividends on all claims previously proven or adjudicated.

"The receiver of such bank shall, after the expiration of said twelve weeks, file with the Auditor and with the clerk of such court as may have charge of the liquidation, a correct list of all creditors of said bank . . . who have not presented their claims. . . . Such claims so filed shall be deemed proven, unless objections are filed thereto . . . within such time as shall be fixed by the Auditor or by such court as may have charge of the liquidation. . . .

"At the close of the receivership, it shall be the duty of the receiver to turn over to the Auditor all books of account and other records of such bank for preservation."

In a recent decision the Supreme Court of this State interpreted the Banking Act as conferring no jurisdiction on any court, either to appoint a receiver for a closed bank or to collect and distribute its assets. (*People ex rel. Barrett v. Shurtleff*, 353 Ill. 248.) A similar result was reached in construing the Insurance Liquidation Act in the case of *People ex rel. Palmer v. Niehaus*, 356 Ill. 104, where the court held that the receiver appointed by the director of insurance was an executive or administrative officer and that the duties of collecting and disbursing the assets of a defunct insurance company were imposed upon an official of the executive department, subject to limited supervision by a court of equity. Petitioners concede that under these authorities the receiver was properly appointed, but they contend that by filing the bill of complaint the

auditor of public accounts and his appointee, the receiver, invoked the general equity powers of the court and thereby subjected themselves and the assets and affairs of the defunct bank to the control and direction of the court and vested it with jurisdiction to entertain the petitions presented.

The courts of our State have not passed on this question as applicable to bank liquidation proceedings under the statute but, by analogy, a long line of federal decisions affords considerable enlightenment upon this branch of the case. The banking law of this State is similar in many respects to the acts of Congress relating to the liquidation of closed national banks. U. S. Code, Title 12, Banks and Banking, sec. 192, provides:

"Such receiver, under the direction of the comptroller, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and . . . may sell all real and personal property, on such terms as the court shall direct . . . and may if necessary to pay the debts of such association, enforce the individual liability of the stockholders." Except for the last portion, giving to the receiver the right to enforce stockholders' liability, the foregoing section follows the Illinois Banking Act exactly.

In interpreting the provisions of the Banking Act, the federal courts have consistently held that the receiver appointed by the comptroller is not the officer of the court but is an officer or agent of the United States, and not subject to the jurisdiction of the court, except as to the administrative power expressly given to the court by the statute. Thus, in *In re Chetwood,* 165 U. S. 443, where it was contended that the filing of a proceeding by the receiver for the sale of personal property constituted a submission to the jurisdiction

of the court of the receiver and the affairs of the bank, the court said (p. 459):

"From the terms of the national banking law itself, we think it plain that no such result followed its presentation. Our attention has been called to no case in which it has been held that the filing of such petitions by national bank receivers in the Federal courts operates to make the receiver an officer of the court or to place the assets of the bank within the control of the court in the sense in which control is acquired where a receiver is appointed by the court."

In *Fifer v. Williams,* 5 F. (2d) 286, the receiver had applied to the court under the act for an order approving his plan to transfer or sell substantially all the assets of the bank. An appeal from the order approving the sale was dismissed on the ground that the application to the court under the statute did not subject the assets or the affairs of the receiver to the general jurisdiction of the court, and in passing upon the point the court said (p. 288):

"In the present matter, as in the *Chetwood* case, *supra,* the application was entitled 'In the matter of' the receivership of the insolvent bank. By the application the receiver did not submit himself and the affairs of the bank to the jurisdiction of the court; nor did the presentation of the application operate to make the receiver an officer of the court, or place the assets of the bank under the control of the court 'in the sense in which control is acquired where a receiver is appointed by the court.' . . . He belongs to the executive branch of the government, and his custody of the assets is not that of the court."

In *Jackson v. McIntosh,* 12 F. (2d) 676, it was held that the remedy of a creditor of a closed national bank to prevent the consummation of a wrongful sale of the assets by the receiver cannot be had in the liquidation proceeding, but in a separate suit for an injunction.

In *Hulse v. Argetsinger,* 18 F. (2d) 944, the court, in dismissing an appeal from an order approving a settlement with directors of a national bank, said (p. 945) that

"The receiver of a national bank appointed by the comptroller is his officer, not an officer of the court, nor are its assets while in his hands *in custodia legis.* . . . They do not become such by an order confirming a composition of debts made by him. Such an order is merely a condition upon the receiver's power to compound the debt; it is not made in any suit, nor does it adjudicate any rights *inter partes.* (*Fifer v. Williams,* 5 F. (2d) 286; *Jackson v. McIntosh,* 12 F. (2d) 676, 678.) It is the exercise of a visitatorial power, given to the court by the statute. and limited to that function. It is an administrative check upon the otherwise unconditioned powers of the comptroller."

In the case of *Ex parte Moore,* 6 F. (2d) 905, it was said (p. 908) that

"The receiver is not an officer of the court, nor does the receiver by this application submit himself and the affairs of the bank to the jurisdiction of the court; nor does the presentation of the application operate to make the receiver an officer of the court, or place the assets of the bank under the control of the court 'in the sense in which control is acquired where a receiver is appointed by the court.' This proceeding is an *ex parte* proceeding, and though by the will of Congress put under judicial cognizance, is not by its own nature a judicial controversy."

Other States have placed a similar construction upon their banking laws. In *Bennett v. Duke,* 38 Ga. App. 598, 144 S. E. 686, the reviewing court reversed an order directing the superintendent of banks to pay over certain funds of the bank to a commissioner appointed by the court, and in the course of its opinion said (p. 687):

"The superintendent of banks having in charge an insolvent bank for liquidation under the authority of the Banking Act . . . is an officer of the State, charged with the duty of administering the assets of the bank in accordance with the terms and provisions of the act, and, notwithstanding the act provides that the superintendent of banks, in the performance of certain duties devolving upon him as such liquidating officer of the bank, such as making disbursements for expenses incurred in the liquidation of the bank and in selling the assets of the bank, must obtain an order of approval from the judge of the superior court, the superintendent of banks is not an officer or a receiver of the superior court. In administering the assets of the bank he is not amenable to the jurisdiction of the superior court. The power which is lodged in the judge of the superior court to approve the amount fixed as provided in . . . the banking act . . . is not judicial, but administrative only. . . ."

The same court, in *Cochran v. Bennett,* 37 Ga. App. 202, 139 S. E. 428, said:

"The judge of the superior court, when passing upon an application of the superintendent of banks for permission to sell the assets of a bank which has been taken over by the superintendent, and in passing an order authorizing a sale of the assets of the bank by the superintendent . . . is not administering the assets of the bank, and passes upon and adjudicates no rights of parties, but is merely, under statutory authority, directing a state officer, who is not an officer or receiver of the court, in the discharge of a statutory duty." (Citing several of the foregoing federal cases.)

In *State ex rel. Richmond v. District Court,* 45 Wyo. 29, 14 P. (2d) 673, the court issued a writ of prohibition preventing the District Court from entering an order permitting the receiver to borrow from the Re-

construction Finance Corporation. The court, after citing some of the foregoing authorities, said (p. 681):

"These authorities make it plain, we think, that the district court has no legal authority to deal with the affairs of an insolvent bank in the hands of the state examiner unless the statute so directs. The argument for the defendants is, as we understand it, that the general chancery power of the court to control and direct a receiver appointed by it may be here invoked by the state examiner and the latter thereby transformed, under the circumstances here shown, into an officer of the court and derive his authority to act from that source. But the whole scheme of the law relative to the administration of the assets of insolvent banks, as the citations above given show, repels any such view."

The State of Utah has a statute in many respects similar to the Illinois Banking Act, and in construing the same the court, in *Riches v. Hadlock,* 80 Utah 265, 15 P. (2d) 283, said (p. 287):

"By the statute . . . it is clear that as to banks and banking institutions the Legislature in such case took from the courts . . . their time-honored equity or chancery prerogatives in the appointment of receivers and in directing and controlling them as officers of the court. . . . The commissioner takes possession and holds it without the aid of, and despite, judicial action. It is of little moment what the commissioner be called, whether a statutory receiver or what not. . . . He is a mere executive creature of the statute, not of the court, and can exercise only such powers as the statute has given him; and no order of the court applied for can be broader than the statute. In other words, he is a public agent or officer of the State and derives his power from the statute."

The court then proceeds in its opinion to state, most clearly and concisely, the distinction between a chan-

cery receiver and a bank receiver as created by the statute, as follows (p. 288):

"A striking dissimilarity between a chancery receiver and the bank commissioner as here created by the statute is, that the former is a creature and an officer of the court, who in all primary matters is under the orders and directions of the court, and whose custody of property and assets of the bank is the custody of the court to be administered under its orders and directions, while the latter is a creature and a public officer of the state, whose custody of the property and assets of the bank is not the custody of the court, and where the assets are to be administered by him without aid or direction of the court, except as by the statute otherwise provided. Thus, in determining what power in the premises may be exercised by the commissioner or what orders or directions may be given him by the court, we must look to the statute." Other cases to the same effect are *Miracle v. Dixon,* 121 Okla. 180, 249 Pac. 153; *In re Union Bank of Brooklyn,* 163 N. Y. S. 485; and *Therrell v. Rinaman,* 107 Fla. 110, 144 So. 327.

These cases, federal and State, and others cited in defendants' brief are generally to the effect that receivers in liquidation proceedings, appointed under statutes similar to ours, are administrative officers and not subject to the jurisdiction of the court except as to such supervisory powers as may be conferred on the court, by statute, for specified purposes.

The receiver takes the position that the only supervisory power, administrative or judicial, over him or the auditor is found in that portion of the Illinois statute which provides that the receiver may (1) sell or compound bad or doubtful debts; (2) sell real or personal property; and (3) adjudicate claims filed with the clerk of the court before whom the dissolution suit is pending. However, the same section of the statute also provides that "as soon as can reasonably be

done, he (the receiver) *shall* resign, on behalf of said bank, all trusteeships, guardianships, conservatorships, and all appointments as executor and administrator, making in each case a proper accounting on behalf of said bank." The language of the statute is mandatory. The receiver in the case at bar had been appointed January 12, 1934, and more than four months had elapsed when, on May 25, 1934, the receiver moved to vacate the order requiring him to resign all trusteeships. This certainly constituted reasonable and ample time within which to comply with the statutory requirement. Unless the receiver voluntarily resigned, as the statute requires he should, there was no way to enforce his resignation except by court order, and it would be idle to contend that a court could not direct him to resign when in disobedience of the statute he had failed or refused so to do. While the statute provides no method for carrying out the mandate of the legislature, the implication is plain that a court will enforce it when its jurisdiction is invoked for that purpose, and petitioners certainly ought not to be required to institute new proceedings to enforce rights made available by statute in a pending suit. We hold that the right of petitioners to compel the resignation of the receiver from trusteeships is statutory, and constitutes just as much a supervisory power conferred on the court by statute as the other powers conceded by the receiver to have been vested in the court. Therefore the first petition, filed April 26, 1934, asking solely for the resignation of the receiver from trusteeships in which the bank had been designated, was improperly dismissed for want of jurisdiction.

Petitioners insist that the court should also have retained jurisdiction to afford the relief prayed in the second petition, filed May 10, 1934, and the gravamen of their argument is that the subject matter of the petition constituted a "claim" within contemplation

of the statute. No cases are cited to support this contention, however, and we believe the statute is not susceptible to so broad a construction. The claims referred to in the statute are evidently those of creditors of the bank which were in being when the bank closed. 7 Corpus Juris 743 states that ''among claims which may be allowed against an insolvent or dissolved bank may be mentioned deposits, notarial charges, . . . loans . . . and a claim for loss resulting from the bank's breach of a lease.'' All of these are money claims, in existence at the date of the closing of the bank. The relief sought by petitioners is not a claim in that sense of the word, but rather the adjudication of several independent rights based upon an agreement between numerous bondholders under various issues, and petitioners, as a committee representing all the bondholders, seeking an order on the receiver to deliver all bonds then on deposit under the depositary agreement to a successor depositary and for certain lists and information calculated to aid petitioners to enforce the agreement and protect the rights of the bondholders. The statute confers no supervisory power on the court with reference to controversies of this nature, and no such powers can be fairly implied from any provision of the statute. Courts should not by construction seek to change the nature of the liquidation proceeding as defined by statute, so as to confer upon the court the general powers of a court of chancery. That is not the purpose of the statute, and the cases hereinbefore cited, construing similar statutes, so hold. The petitioners herein say that certain bonds were wrongfully or fraudulently withheld by the auditor or his receiver. One of the questions, therefore, necessarily presented to the court by this petition involves the validity of the agreement, and if that were to be determined by the court, the liquidation proceeding would completely lose its administrative character.

Petitioners also seek to invoke the doctrine that when a court of chancery has once obtained jurisdiction of the subject matter, it will retain the same for all purposes and do full equity between the parties. This rule of law is not applicable to the situation before us, because the proceeding here is not a chancery proceeding. The statute provides that the auditor of public accounts may file a bill in any court, and not necessarily in a court of chancery, and the decisions construing similar statutes characterize the proceeding as of an administrative character, conferring jurisdiction on the court only for the purposes specified in the statute and those that may fairly be implied therefrom. Consequently, in determining the extent of the court's power, we must examine the statute and not invoke the rules applicable to general chancery proceedings.

Our attention is called to the fact that the court entered certain orders approving the payment of fees of the receiver and his solicitors, and based upon these facts it is argued that the court also had jurisdiction to entertain the second petition. The propriety of entering orders for the allowance of fees is not before us, but the fact that such orders were entered would not confer upon the court general jurisdiction if such did not exist.

In conformity with our views, the petition of April 26, 1934, praying for an order directing the receiver to resign all trusteeships within a short day should have been entertained, and accordingly that part of the decree of June 14, 1934, dismissing said petition for want of jurisdiction will be reversed and the cause remanded with directions that the court order the receiver to resign, within a short day to be fixed by the court.

Because the subject matter of the petition of May 10, 1934, is foreign to the liquidation proceeding, and

jurisdiction to hear the same is not expressly, nor by implication, conferred on the court, we are of the opinion that said petition was properly dismissed for want of jurisdiction and accordingly that part of the decree will be affirmed.

*Reversed in part and cause remanded with directions; and affirmed in part.*

SCANLAN and SULLIVAN, JJ., concur.