(No. 21938.—

THE PEOPLE *ex rel.* Edward J. Barrett, Auditor of Public Accounts, Petitioner, *vs.* EDWARD D. SHURTLEFF, Circuit Judge, Respondent.

*Opinion filed June 15, 1933—Rehearing denied October 12, 1933.*

Stone and Heard, JJ., specially concurring.

Otto Kerner, Attorney General, for petitioner.

Harold O. Mulks, Max Przyborski, Harold J. Tallett, and George B. Gillespie, for respondent.

Mr. Justice Dunn delivered the opinion of the court:

At the April term the Attorney General, pursuant to leave granted, filed a petition in the name of the People, on the relation of the Auditor of Public Accounts, against Edward D. Shurtleff, judge of the circuit court of Lake county, commanding him to expunge, vacate and set aside an order entered by him as such judge on March 7, 1933, in the case of the People of the State of Illinois, on the relation of Edward J. Barrett, Auditor of Public Accounts, against the Lake County State Bank, (No. 31359,) pending in the circuit court of Lake county, ordering William L.

O'Connell to cease from functioning as receiver of the defunct Lake County State Bank, and also commanding the respondent to vacate and expunge an order entered by him on March 10, 1933, in the same cause, appointing James H. Clendenin receiver of the assets and property of the Lake County State Bank upon his giving a bond in the sum of $50,000, and directing that upon the presentation and approval of such bond, with sufficient surety, Clendenin be vested with power, as receiver, over the assets and property, real and personal, of the Lake County State Bank. The respondent filed an answer to this petition, to which the relator demurred, and the cause was submitted upon the pleadings and the printed briefs of the parties.

The case No. 31359 in the circuit court of Lake county was a bill in chancery filed by the Attorney General in the name of the People, on the relation of the Auditor of Public Accounts, for the purpose of terminating the corporate existence of the Lake County State Bank. The bank, alone, was made defendant to the bill, which alleged its incorporation on April 3, 1914, with a capital stock of $50,000, increased on December 30, 1929, to $100,000, and its conduct of a general banking business in the city of North Chicago from its organization until January 24, 1933. At a meeting of the board of directors held on January 23, 1933, a resolution was adopted ordering that the bank be not opened for business on January 24, and a majority of the board of directors signed a written instrument which recited the adoption of the resolution and requested the Auditor of Public Accounts to take charge of the affairs of the bank. Upon receipt of this request the Auditor took possession and control of the banking house, books and assets of the bank and caused an examination to be made of its financial condition, as a result of which he ascertained and determined that its capital stock was impaired and that the deficit in its resources was to an amount in excess of the whole of its surplus, reserve and undivided

profits and that its condition was such that the impairment could not be made good. The Auditor retained possession and control of the banking house, books and assets of the bank until February 24, and during all that time the bank did not carry on the business for which it was organized. On February 24, 1933, the Auditor determined that the bank could not be re-organized and should be liquidated through a receivership, and thereupon appointed William L. O'Connell, of Chicago, as receiver, and required that he give bond and security in the sum of $50,000 for the faithful performance of his duties as such receiver. This bond was duly given, with security approved by the Auditor, and O'Connell thereby became, and is now, the duly authorized and constituted receiver of the bank and all its property. Pursuant to his appointment the receiver, under the direction of the Auditor, took possession of the books, records and assets of every description of the bank, and, for the purpose of the receivership, of the title to such property, and proceeded to collect, and was still collecting, all debts, dues and claims belonging to the bank, and the Auditor caused the notice required by the statute to be given by advertisement, calling on all persons who might have claims against the bank to present them to the receiver and to make legal proof of them. The bill continued that it would be necessary, in order to protect the interests of the bank and all persons interested, for the receiver to compromise some of the debts due the bank and any claims which the bank might have about which there might be a controversy and to sell the personal property and real estate owned by the bank; that the receiver should be permitted by the court to file with the court from time to time, as the interest of the bank might require, petitions asking the court to hear such petitions and grant such orders as would properly authorize the receiver to compromise such debts or claims or to make such sales of personal property and real estate upon such terms and at such times as the

court should order; that the receiver should promptly make a report to the court of all such sales of real or personal property, and such report, when approved by the court, should be binding upon all persons interested in such property; that the receiver should be permitted to present to the court, from time to time, petitions seeking its aid and direction relative to the other problems which might arise in the course of the receivership, and that upon the settlement of the affairs of the bank and the disposition of its assets the corporate existence of the bank should be terminated by decree of the court.

The prayer of the bill was, (1) that the defendant, the Lake County State Bank, a corporation, might be compelled to make full and direct answer to the bill but not under oath, the answer under oath being waived; (2) that a hearing might be had on the bill and a decree entered finding that on January 24, 1933, the Auditor took possession and control of the banking house, furniture and fixtures, books, records and assets of every description of the bank, for the purpose of examination and adjustment and re-organization or liquidation through receivership, and that he retained possession and control until February 24, 1933, when he determined that the bank could not be re-organized but that it should be liquidated through a receivership; (3) that a decree might be entered finding that the Auditor appointed William L. O'Connell receiver for the bank and required of him bond and security in the sum of $50,000 for the performance of his duties as receiver; that O'Connell, as receiver, gave his bond as required, with security approved by the Auditor, and that O'Connell thereupon became the duly authorized receiver of the bank and all of its property, assets and effects, and took possession, for the purpose of the receivership, of the title to the banking house, books and assets of the bank; (4) that the receiver might, upon proper petition, be authorized by the court, by orders to be entered from time to time, to sell or compound all

bad or doubtful debts due the bank and to sell all real estate and personal property belonging to it, on such terms and in such manner as such orders might provide; that he might be authorized and directed to make compromises of claims and debts owing to the bank when the best interests of the creditors require that compromises be made, on condition that all such compromises, adjustments and settlements should be made subject to the approval of the court; (5) that the receiver might be authorized to present, from time to time, petitions to the court seeking its aid with reference to various problems which might arise in the administration of the assets, property and estate of the bank; (6) that the receiver might be directed to exhibit to the court from time to time, as the court might require, a full and perfect inventory showing all the assets, property and effects of the bank coming into his hands, possession or knowledge; (7) that in case there be a remainder of the proceeds of the assets of the bank after the payment of all claims previously proved or adjudicated as required by law, and all the costs and expenses of the suit and receivership, the receiver might be directed to report the amount of such remainder to the court for its further order and direction in the premises; (8) that the receiver might be directed to file with the clerk of the court, after he had collected and distributed all the proceeds of the assets of the bank, an itemized report of all moneys received and disbursed by him; (9) that upon the settlement of the affairs of the bank and the disposition of its assets its corporate existence might be terminated and dissolved; (10) that the complainant and the receiver might have such other and further relief in the premises as equity might require and to the court might seem meet, and that all orders, steps and proceedings necessary or proper in the premises might be had and taken as equity might require.

The only independent relief prayed by the Auditor's bill was the dissolution of the corporation and general relief.

The prayer of the bill consists of ten distinct clauses, but none of these asks for any relief except the last two. The bill does not ask the appointment of a receiver or the approval, expressly, of the Auditor's appointment of one, or of the qualification of the receiver or of any action of the Auditor or the receiver. The first three clauses of the prayer merely ask the court, after a hearing, to enter a decree finding that the Auditor took and retained possession and control of the assets and records of the bank for the purpose of examination, adjustment and re-organization or liquidation, that he determined that it could not be re-organized and appointed O'Connell receiver, requiring bond and security, which O'Connell gave, and that O'Connell thereupon became the duly authorized receiver of the assets of the bank and for the purpose of the receivership took possession of the title to the banking house, books and assets of the bank. Clauses 4 to 8, inclusive, ask no relief but only that by orders to be entered by the court, upon proper petitions, from time to time, the receiver may be authorized to sell or compound debts due the bank, to sell the real and personal property of the bank, to make compromises of debts owing to the bank, and to present to the court petitions for its aid with reference to problems which may arise in the administration of the assets of the bank; that the receiver be required to exhibit to the court, from time to time, an inventory showing all the assets of the bank coming to his possession; that he may be directed to report the amount of any remainder of the assets after the payment of all claims and all the costs and expenses of the suit and the receivership, and to file with the clerk of the court, after the distribution of all the proceeds of the assets, an itemized report of all money received and disbursed by him. There is no prayer for any order of distribution by the court, unless such order might be made under the prayer in clause 10 for general relief.

The bank was the sole defendant to the bill and it filed
no answer, but on March 7 certain petitioners, twenty-one
in number, including three corporations and the treasurer
and *ex-officio* county collector of Lake county, presented
to the court their petition for leave to intervene in the
cause, and the court having heard the petition for leave to
intervene and the arguments of counsel, ordered that the
petition be granted and that the petitioners be given leave
to intervene as parties complainant in said cause on behalf
of themselves and other persons in the same situation, for
the purpose of being heard in the matter of the appoint-
ment of a receiver for the Lake County State Bank. The
intervening petition represented that the petitioners were
residents of Lake county doing business in that county and
were depositors and creditors of the Lake County State
Bank. It alleged the filing of the bill of complaint by the
Attorney General and recited its allegations and prayer and
set out the order of the Auditor appointing William L.
O'Connell receiver. The petition further represented that
the petitioners had on deposit in the Lake County State
Bank at the time of its closing more than $100,000 in ex-
cess of all set-offs and counter-claims and that no part of
that amount had been paid to the petitioners; that they
were not informed or notified of the appointment of the
receiver by the Auditor; that they were familiar with a
number of the creditors and debtors of the bank and of its
personnel and operation during past years, and that they
were further informed as to the character of the deposits
in the bank and the character of the neighborhood in which
the bank was operating, approximately forty miles from
the city of Chicago, and that the affairs of the bank and
the doings and habits of the people doing business with it,
both creditors and debtors, were of a different kind from
those of the city of Chicago. The petitioners further rep-
resented that they were informed and believed that O'Con-
nell was not and had not been in the banking business;

that he was not a resident of Lake county and was not familiar with the nature of the business being conducted by the Lake County State Bank or with the ability or inability of certain of its debtors to pay their debts or with the extent of their property, assets and ownership, and that the petitioners believed that O'Connell was not conversant and familiar with the situation and conditions surrounding the operation of the bank, and that, further, being a nonresident of the county, he was not familiar with the habits and customs of the people of that area and vicinity and of their doings and habits of business, which were different from and operated on a different scale from the businesses and persons of the city of Chicago; that they were informed that O'Connell had employed to take charge of and operate the bank another person, also a resident of Chicago, and that the appointment of O'Connell by the Auditor was nominal, only, and that the operations of the receivership, if conducted, would be by some employee or agent of O'Connell, to the end that the bank would, in effect, have two receivers, and its assets would thereby be burdened with the cost and expense of O'Connell and of the subordinate and assistant to him in charge of the assets and property of the bank. The petition further set forth that by the constitution of the State the powers of government were divided into three distinct departments, the legislative, executive and judicial, and that no person belonging to one of those departments should exercise any power properly belonging to either of the others. It also represented that the petitioners were informed and believed that the powers and functions of the Auditor of Public Accounts were executive rather than judicial or legislative. Parts of section 11 of the Illinois Banking act were then set forth in the petition, and it then continued with the charge that the statutory powers attempted to be vested in the Auditor are not only judicial but in many instances vague and indefinite and attempt to give the Auditor the power to

usurp the duties and functions of courts; that there are no provisions in the act for fixing the penalty of the bond to be given by the receiver appointed by the Auditor or as to the nature and kind of security or the penalty of the bond, but these are all left to the uncontrolled discretion of the Auditor. Various provisions of section 11 are set forth which the petitioners claim violate not only the article of the constitution providing for the separation of the powers of government but other constitutional limitations. The petition further represented that the petitioners were vitally interested in the management of the assets of the bank by reason of their being creditors and in the person appointed receiver and in the litigation in the suit pending, and believed that they were entitled to intervene in the cause and be made parties either complainant or defendant, to the end that their interests and the interests of all persons like situated might be adjudicated and protected; that they believed it to be to the best interest of the creditors and debtors that the court should appoint as receiver to liquidate the corporation, some reputable and competent person from Lake county who was familiar with the assets and holdings of the debtors to the bank and of their ability or inability to pay their debts and of the nature and tenor of the residents and habits of the community and of their usual and customary practices in life and in business; that they further believed it to be for the best interest of the creditors and debtors and their deposits that there should be only one receiver handling and managing the affairs of the bank, and that he be some reputable and competent person appointed by the court upon such bond, in such penalty and with such security as the court might adjudicate, without the interference of persons not familiar with the conditions of the community and the bank and without saddling upon the assets of the bank the services and expenses of two persons acting as receiver and assistant receiver. The petitioners therefore prayed that

an opportunity would be given to them to be heard in the matter of the appointment or confirmation of the appointment of a receiver to liquidate the bank, and that for this purpose the court would examine and entertain their petition for leave to intervene, and would examine and investigate the qualifications of such person or persons who might be submitted by the Auditor or by the petitioners or other persons like situated, prior to the appointment by the court of a receiver or the confirmation of the appointment of a receiver, to the end that the best interests of all persons interested and concerned in the bank would be preserved and the rights of all persons would be economically, fairly and impartially adjudicated, and that for such purpose the court deny and refuse the confirmation of the appointment of O'Connell as receiver of the bank and appoint instead some person residing in Lake county whom the court should determine to be a fit and proper person to preserve the rights of all persons interested in the subject matter.

Upon the filing, under leave granted by the court, of this intervening petition, it was ordered, on the motion of the intervening petitioners, that all officers, agents and employees of William L. O'Connell in possession, control and handling of the assets of the Lake County State Bank cease and desist from functioning as receiver or alleged receiver of the bank until the further order of the court. A motion made by the Attorney General to strike from the files or dismiss the intervening petition for want of jurisdiction was denied by the court on March 10, as also was a demurrer to the intervening petition. The Attorney General then filed a petition on behalf of the Auditor that the orders entered granting leave to the intervening petitioners to intervene and ordering O'Connell and his officers, agents and employees in possession of the assets of the bank to cease functioning as receiver of the bank be vacated and expunged from the record, and a similar petition was filed on behalf of O'Connell. Both of these petitions were de-

nied by the court. Thereupon the court, upon consideration of the bill of complaint of the People on the relation of the Auditor, the intervening petition, the demurrer to the intervening petition and the motions of the respective parties, on March 10, 1933, entered an order finding that the provisions of section 11 of the Banking act with reference to the appointment of a receiver and taking title by such receiver to the assets of the bank and the exercising of judicial powers and functions by the Auditor and by such person or persons named or appointed by him as receiver are unconstitutional and void acts, and that O'Connell is not the receiver of the Lake County State Bank and has no right or authority to exercise any dominion or power over the property of the bank, and decreed that James H. Clendenin, of Lake Forest, Lake county, be appointed receiver of the bank on his entering into bond in the sum of $50,000, conditioned for the faithful performance of his duties as such receiver, the bond to be approved by the court within five days. It was further decreed that Clendenin, upon the filing and approval of his bond, take possession and charge of the assets of every kind of the bank and file in the office of the clerk of the court an inventory of such assets coming into his hands and possession, knowledge or attention, and proceed with the liquidation of the affairs of the bank, and apply to the court, from time to time, for orders and direction in and about the handling, management, collection and liquidation of the assets of the bank and the making of distribution thereof. A motion by the Attorney General to expunge this order was also denied.

It is not the office of the writ of *mandamus* to review the orders, judgments or decrees of courts for error in their rendition or to correct, direct or control the action of a judge in any matter which he has jurisdiction to decide. For mere error, however gross or manifest, the remedy is an appeal or writ of error, and the writ of *mandamus* will

not lie for its correction if the court has jurisdiction of the subject matter and the parties. (*Richards* v. *People*, 81 Ill. 551; *Blanchard Bro. & Lane* v. *Gay Co.* 289 id. 413.) Therefore, if the circuit court of Lake county had jurisdiction of the question of the appointment of a receiver for the bank and the collection and distribution of its assets the correctness of its decision cannot be reviewed in this proceeding, and if it had not jurisdiction of that question its order is void and upon a writ of *mandamus* will be ordered to be expunged.

Courts of chancery have no general power to appoint receivers for corporations and can appoint them only when expressly authorized by statute. (*Coquard* v. *National Linseed Oil Co.* 171 Ill. 480; *Wheeler* v. *Pullman Iron and Steel Co.* 143 id. 197; *Chicago Steel Works* v. *Illinois Steel Co.* 153 id. 9; *People* v. *Weigley,* 155 id. 491.) The doctrine of the common law is that a corporation cannot be dissolved at the instance of an individual, and that the State, or the Attorney General as the representative of the State, is a necessary party to any suit to dissolve a corporation for a forfeiture of its charter. It is entirely competent for the legislature to provide by statute for the dissolution of a corporation at the suit of an individual even though that is no part of the usual or general jurisdiction of a court either of law or chancery, but it is not only the rule that without the authority of a statute a corporation cannot be dissolved at the suit of an individual, but it is also the rule that without statutory authority a court of chancery has no jurisdiction to decree the dissolution of a corporation. (*Hunt* v. *LeGrand Roller Skating Rink Co.* 143 Ill. 118; *Chicago Mutual Life Indemnity Ass'n* v. *Hunt,* 127 id. 257.) "A court of chancery can be specially empowered by statute * * * to divest a corporation of its corporate character and capacity, otherwise in all cases the mode of proceeding to enforce a dissolution for cause of forfeiture is by *scire facias* or an information

in the nature of a *quo warranto* in a court of law." *Baker* v. *Admr. of Backus,* 32 Ill. 79.

It was held in *Blanchard Bro. & Lane* v. *Gay Co. supra,* that appointing a receiver to take possession of the assets of a corporation and distribute them is tantamount to dissolving the corporation by a decree in equity, and that when the property of a corporation is all sold and distributed and its officers are powerless to obtain further means to carry on its business, it is powerless to exercise its corporate franchise and is then for all practical purposes dissolved. This holding was approved in *Nelson* v. *Toluca State Bank,* 334 Ill. 83, and was followed in *Steenrod* v. *Gross Co.* id. 362, in which the question was involved of the effect of an appointment by the circuit court of a receiver in a suit brought for the settlement of the affairs of a corporation and the application of its assets to the payment of its debts, and, after the payment of its debts, the winding up of its affairs and the distribution of its assets among its stockholders. It was said that the appointment of a receiver was a mere incident to that relief, to enable the court to take possession of the property and business of the company and finally wind up its affairs. The court had no general equity powers in the case. It was without jurisdiction, at the suit of creditors, except possibly for fraud, to grant the ultimate relief prayed by the bill or to appoint a receiver and order him to take possession and control of the assets, and being wholly without jurisdiction in the case its orders were void.

There is no statute in Illinois which confers jurisdiction on a court of equity to appoint a receiver for a banking corporation or to decree its dissolution on the application of its stockholders or creditors. The bill of complaint of the People did not ask for the appointment of a receiver. The intervening petitioners did not ask for such appointment or for any relief except the opportunity to be heard in regard to the appointment and confirmation of the ap-

pointment of a receiver. The court here, as in the *Steenrod case,* had no general equity powers under which it had jurisdiction to grant the ultimate relief prayed for by the petition. Appointment of the receiver could have been but a mere incident to that relief to enable the court to take possession of the assets of the bank and finally wind up its affairs, and since the court was without jurisdiction, at the suit of creditors, except possibly in cases of fraud, to grant that relief, it was wholly without jurisdiction to appoint a receiver in this case, in which there was no charge of fraud.

The respondent contends that the power of the court to appoint a receiver of the assets of a corporation is one that inheres in and is incidental to the jurisdiction of a court of equity. There are many heads of jurisdiction inherent in the court of equity from its nature, but a court of equity has no peculiar jurisdiction over corporations to restrain them in the exercise of their powers, to control their action or prevent them from violating their charters where no fraud or breach of trust is alleged as the foundation of the claim for equitable relief. The rights and duties of corporations are regulated by law. It is only where there is no plain and adequate remedy at law and a case is presented which authorizes equitable relief under some general head of chancery jurisdiction that a bill can be maintained against a corporation to appoint a receiver. In *Wallace* v. *Pierce-Wallace Publishing Co.* 101 Iowa, 313, it is said: "It is certainly true that in the absence of express statutory authority jurisdiction of ,courts of equity does not extend over corporate bodies to such an extent as to justify them in dissolving corporations or in winding up their affairs and sequestrating their property. This seems to be so well settled that there is scarcely a dissenting voice in authority." This is quoted and approved in *Vila* v. *Grand Island Electric Light Co.* 68 Neb. 222, which also holds that the appointment of a receiver in an equita-

ble action is ordinarily an ancillary remedy provisional in character, incidental to the main object of the suit, and can not be made in a suit begun solely for that purpose.

Cases have arisen in which fraud and mismanagement of the affairs of a corporation by its officers and directors in control of its business have been charged, in which it has been held that a court of equity has jurisdiction in such cases to require an accounting upon complaint of a minority stockholder and to appoint a receiver. *Exchange Bank* v. *Bailey,* 29 Okla. 246, is one of these cases, and in the opinion of the court, after the quotation from Pomeroy on Equity Jurisprudence, section 119, that "it is well settled, with scarcely a dissenting voice, that in the absence of express statutory authority a court of equity has no power to dissolve a corporation or to wind up its affairs and sequestrate its property," it is said: "This statement of the text is supported, as a general rule of law, by almost all the decided cases, but the eminent author states in the same section that 'a few exceptions have, however, been admitted to this rule, as where the corporation had utterly failed of its purpose because of fraudulent mismanagement and misappropriation of its funds by the president and manager, who owned a majority of its stock, a receiver was appointed to wind up its affairs at the suit of a minority stockholder.' " The jurisdiction of equity was upheld because of the fraud, but the decision went no further. In *Abbott* v. *Loving,* 303 Ill. 154, the court affirmed a decree dissolving a corporation because of fraud in its organization, but that was done under section 54 of the general Corporation act, which expressly authorized it but has no application to banking corporations.

Under our decisions and in consonance with the well settled rule recognized in other jurisdictions, courts of equity are without jurisdiction, in the absence of a statute conferring it, to dissolve a corporation or to wind up its affairs and sequestrate its property, or to appoint a receiver

for the collection of its assets, the settlement of its business, the payment of its debts and the distribution of its property. A decree purporting to be entered granting such relief is void. A decree of a court of equity must rest upon a bill stating a case of a character of which the court has jurisdiction. The jurisdiction does not depend upon the sufficiency of the bill. If the court has jurisdiction of the subject matter—that is, the power to render a decree in the class of cases to which the particular case in question belongs—and of the parties, nothing further is required. The cause of action may be defectively stated in the bill, but that will not destroy jurisdiction. Jurisdiction of the subject matter does not mean, simply, jurisdiction of the particular case before the court, but jurisdiction of the class of cases to which the particular case belongs. Jurisdiction does not depend upon the rightfulness of the decision. It is not lost because of an erroneous decision, however erroneous that decision may be. (*O'Brien* v. *People*, 216 Ill. 354; *Franklin Union* v. *People*, 220 id. 355.) In this case there was no attempt to state any fraud as the basis for the appointment of a receiver, the taking possession of the bank's assets and the settlement of its business. The case stated either in the Auditor's bill or in the intervening petition did not belong to the class of cases of which jurisdiction has been taken sometimes by some courts on the ground of fraud. The case presented to the court for its decision was not of the class of cases of which a court of equity has jurisdiction, and the decree of the circuit court was therefore void. Since the decree is void for want of jurisdiction, the petition for *mandamus* presents no constitutional question for our consideration.

The power of this court to award a writ of *mandamus* requiring a *nisi prius* court to expunge from its records an order, judgment or decree entered without jurisdiction is well known and has been exercised in many cases. The writ of *mandamus* is awarded, requiring the circuit court

of Lake county to expunge from its records the orders of March 7 and March 10, 1933, entered by the respondent in case No. 31,359, entitled People of the State of Illinois, on relation of Edward J. Barrett, Auditor of Public Accounts of the State of Illinois, *vs.* Lake County State Bank.

*Writ awarded.*

Mr. JUSTICE STONE, specially concurring:

I concur in the foregoing opinion and in the award of the writ only in so far as it directs respondent to expunge the order of March 10, 1933, purporting to appoint a receiver.

Mr. JUSTICE HEARD, specially concurring:

I am of the opinion that section 11 of the Banking act is constitutional and valid and that this section gave to the Auditor of Public Accounts, and to him alone, power and authority to appoint a receiver for the bank in question for the purpose of re-organization or liquidation through receivership at the time in question. The only time when the circuit court has power to appoint a receiver for a bank is when it shall have gone into liquidation. Under the provisions of the act the court may then appoint a receiver in a suit in equity in the nature of a creditor's bill, brought by a creditor on behalf of himself and all other creditors of the bank, against the shareholders thereof, for the purpose of enforcing the individual liability of the shareholders provided for by section 6 of the act. This being true, the circuit court had no power to entertain the intervening petition and to remove the receiver appointed by the Auditor of Public Accounts and appoint another receiver in his stead. I agree with the conclusion of the opinion but not with some of the reasoning by which it was reached.