(No. 48947.—

ST. LOUIS—SAN FRANCISCO RAILWAY COMPANY, Petitioner, v. JOHN GITCHOFF, Judge, *et al.,* Respondents.

*Opinion filed October 5, 1977.*

DOOLEY, J., specially concurring.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Norman J. Gundlach and Gerald D. Morris, of counsel), for petitioner.

John T. Pierce, Jr., of Pratt, Pierce & Bradford, Ltd., of East Alton, for respondent Stites.

MR. JUSTICE MORAN delivered the opinion of the court:

This is an original proceeding wherein petitioner, the St. Louis-San Francisco Railway Company (Railroad), seeks a writ of *mandamus* from this court reversing the trial court's denial of the Railroad's motion to quash summons, service and return. Respondent Winfred Lane Stites, the plaintiff in the trial court proceeding, there sought recovery under the Federal Employers' Liability Act (45 U.S.C. sec. 51 *et seq.*) for alleged injuries which occurred in Missouri. As the defendant in that action, the Railroad, under section 20 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 20), filed a limited appearance and the above motion. After a hearing, Judge Gitchoff of the circuit court of Madison County denied the Railroad's motion.

Although neither party asserts the impropriety of an original action in *mandamus* to resolve the issues of this case, we deem it appropriate to note that this court granted leave to file the *mandamus* herein at a time when there was pending before it the case of *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, which raised similar issues in a like context. There, we observed that a substantial number of corresponding cases against that railroad were pending in the circuit court of Madison County. Under these circumstances, in the interest of judicial economy, we have elected to proceed to the merits of this petition.

The Railroad is a foreign corporation organized under the laws of the State of Missouri. It has its headquarters in St. Louis, and is not licensed to do business in the State of Illinois. The Railroad operates in nine states: Missouri, Kansas, Oklahoma, Arkansas, Tennessee, Mississippi, Alabama, Texas and Florida. Its northern terminus is the Lindenwood Yards in St. Louis, Missouri. It has no railroad trackage in Illinois, and therefore operates no "run

through" trains in this State. The shipment of the Railroad's freight into or out of Illinois is handled by a corporation known as the Terminal Railroad Association (TRRA), which operates a switching or transfer facility between St. Louis, Missouri, and Madison and St. Clair counties in Illinois. The Railroad maintains a sales office in Chicago, which office is staffed by seven employees. The solicitors there, as in the Railroad's 54 sales offices across the continental United States, are paid a salary, receive no commissions, and collect no money from shippers.

Mr. John Harvey, assistant superintendent of the Railroad's St. Louis terminal, is responsible for coordinating and expediting the movement within Illinois of the company's cars and those cars consigned to it by other railroads. In this connection, Mr. Harvey has, for approximately the last 10 years, spent between 60% and 80% of his working hours in Illinois. An office was provided for his use in the TRRA Brooklyn shops at Lovejoy, Illinois, in St. Clair County, which office was equipped with a direct telephone line to the Railroad's headquarters. While in this office, Mr. Harvey was served process.

Expedited service is of substantial competitive importance to the Railroad in view of the industry's fixed-rate structure. In 1972, the Railroad's revenues for just that traffic which originated or terminated in Madison County, Illinois, totaled $1,867,619. The figure for 1973 was $2,982,188; for 1974, $2,830,545.

The Railroad urges that venue does not lie in Madison County, and that its business contacts in the State of Illinois are insufficient to subject it to personal jurisdiction by the Illinois courts. Dealing briefly with the question of venue, section 6 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 6) provides in pertinent part:

> "Venue—Residence of corporations and partnerships defined. For purposes of venue, the following definitions apply:

(1) Any private corporation or railroad or bridge company, organized under the laws of this State, and any foreign corporation authorized to transact business in this State is a resident of any county in which it has its registered office or other office or is doing business. A foreign corporation not authorized to transact business in this State is a nonresident of this State."

(See *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321.) The pertinent part of the venue statute, section 5 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 5), reads:

"Venue—Generally. Except as otherwise provided in this Act, every action must be commenced (a) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him and not solely for the purpose of fixing venue in that county, or (b) in the county in which the transaction or some part thereof occurred out of which the cause of action arose.

If all defendants are nonresidents of the State, an action may be commenced in any county."

It is clear from the above provisions that the Railroad, a foreign corporation not authorized to do business in this State, is a nonresident and, as such, is not subject to the venue restrictions imposed upon residents of this State by the first sentence of section 5, above. Instead, under the second sentence of section 5, venue in any county is proper. We do not dwell on the issue of venue in view of the clear statutory venue provisions applicable to nonresidents and in view of the Railroad's assertion at oral argument that jurisdiction was the only real issue in this case.

Section 13.3 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 13.3) provides:

"Service on private corporations. A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any

other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals."

This section has been judicially construed to require that a corporation be "doing business" in the State to justify the conclusion that the corporation was sufficiently "present" so that it could be served in the same manner as other resident corporations. Conceptions of what due process requires for the attainment of *in personam* jurisdiction over foreign corporations have altered dramatically over the last 100 years. These developments have been reviewed by this court in *Nelson v. Miller* (1957), 11 Ill. 2d 378, 383-84, and again, most recently, in *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569.

In *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, it was held that *in personam* jurisdiction for an in-State cause of action lies with the forum State when mere solicitation by the foreign corporation is so continuous as to constitute a course of business within that State. There, it was established that due process is satisfied where *in personam* jurisdiction is asserted over a foreign corporation which has with the forum State certain minimum contacts, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' *** [and such] as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection." (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316-17, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) "It is evident that the criteria by which we mark the boundary line between

those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 319, 90 L. Ed. 95, 103, 66 S. Ct. 154, 159.

According to *International Shoe,* "the relationship among the defendant, the forum, and the litigation *** became the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner* (1977), 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698, 97 S. Ct. 2569, 2580.

Assuming compliance with Federal due process, it is for the State to determine to what extent it will open its doors to foreign corporations. Also, it is now clear that, under the criteria of *International Shoe,* Federal due process is not offended by a State's assertion of jurisdiction over a foreign corporation in a cause of action arising from out-of-State activities, providing that the business done in-State by the foreign corporation is sufficiently substantial. *Perkins v. Benguet Consolidated Mining Co.* (1952), 342 U.S. 437, 440-41, 447, 96 L. Ed. 485, 490, 493, 72 S. Ct. 413, 416, 419.

The cornerstones of the Railroad's position are two pre-*International Shoe* and pre-*Perkins* cases wherein mere solicitation was held to be insufficient to establish *in personam* jurisdiction. One case, *Green v. Chicago, Burlington & Quincy Ry. Co.* (1907), 205 U.S. 530, 533-34, 51 L. Ed. 916, 917, 27 S. Ct. 595, 596, mentioned in *International Shoe* but not expressly overruled, was a personal injury action which arose in Colorado and was brought in the Federal district court of Pennsylvania. The second case, *Booz v. Texas & Pacific Ry. Co.* (1911), 250 Ill. 376, bore upon a cause of action which arose in Louisiana but was brought in Illinois. The sole issue in *Booz* was whether service upon the employee of the defendant deprived defendant of its due process of law under the State and Federal constitutions. *Booz,* citing *Green* and other cases,

concluded that "mere solicitors of business are not agents, within the meaning of the statute" (250 Ill. 376, 381), and quashed the service of summons.

The Railroad's Illinois activities are represented here as mere solicitation. The Railroad attempts to discount Mr. Harvey's activities in Illinois as mere "fallout" from the real business of the Railroad. Respondent Stites, on the other hand, asserts that the Railroad's Illinois activities constitute a continuous course of solicitation and that the case, consequently, falls directly under the rule enunciated in *International Shoe*. Respondent Stites therefore urges this court to reconsider the "mere solicitation" rule of *Booz* and the cases following it.

We believe that neither of these lines of authority adequately covers the situation presented in this case. *International Shoe* is only generally applicable because that case arose from an in-State cause of action and related to the foreign corporation's in-State activities—not the situation here. The *Booz* and *Green* cases arose from out-of-State causes of action but are inapplicable here because mere solicitation was the foreign corporation's only activity within the forum State.

The facts here reveal that, in accordance with *Perkins v. Benguet Consolidated Mining Co.* (1952), 342 U.S. 437, 440-41, 447, 96 L. Ed. 485, 490, 493, 72 S. Ct. 413, 416, 419, the Railroad's activities within Illinois go beyond mere solicitation and constitute sufficient substantial business. Mr. Harvey, assistant superintendent of one of the Railroad's terminals, has spent the majority of his working time during the past 10 years in Illinois on the Railroad's exclusive behalf. He is not officed with, nor is he by his activities a member of, the Railroad's sales force. From a separate facility having direct contact with the Railroad's headquarters, he coordinates and expedites the movement of the Railroad's cars into and out of this State. He, in fact, is responsible for that aspect of the operation

which is the very nature of the Railroad's business, the source of, and essential to, its substantial Illinois revenue.

We note, too, that the "estimate of inconvenience" addressed in *International Shoe* has no bearing on the instant case. The Railroad's corporate headquarters are only 20 miles away from the forum State's site of service. Additionally, this suit could have been brought under 45 U.S.C. section 56 in the Federal District Court for the Southern District of Illinois, which court is located in the same county in which the action is now pending.

In the context of our evolving concepts of jurisdictional requirements, the Supreme Court has observed:

" '[T] raditional notions of fair play and substantial justice' can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage." *Shaffer v. Heitner* (1977), 433 U.S. 186, 212, 53 L. Ed. 2d 683, 703, 97 S. Ct. 2569, 2584.

We conclude that, under the facts of this case, the Railroad was "doing business" within Illinois and was, therefore, subject to *in personam* jurisdiction. We further conclude that service of process upon John Harvey, an assistant superintendent of the Railroad, complied with section 13.3 of the Civil Practice Act.

Because of our findings, it is unnecessary that we consider respondent Stites' arguments concerning TRRA's agency relationship with the Railroad.

For the foregoing reasons, the issuance of the requested writ of *mandamus* is denied.

*Writ denied.*

MR. JUSTICE DOOLEY, specially concurring:

I do not believe *mandamus* is proper where a defendant contends it was not subject to service of process

in the jurisdiction since it was not "doing business" within the State. Should the trial court rule adversely, that issue is vital for review after a trial on the merits. It is properly preserved for review by a special appearance and a motion to quash the summons, service and return. Such was the case here.

The Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 20(3)) provides:

> "Error in ruling against the defendant on the objection is waived by the defendant's taking part in further proceedings in the case, *unless* the objection is on the ground that the defendant in not amenable to process issued by a court of this State." (Emphasis supplied.)

See *Keats v. Cates* (1968), 100 Ill. App. 2d 177, 183-84.

As I have pointed out in my dissent in *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 335-37:

> "*Mandamus* is sought not only to order the respondent to act, but to act in a particular way. Whether the ruling of the judge was erroneous and, if so, to what extent, are matters which we are called upon to decide. But it is a well-established rule that '[f]or mere error, however gross or manifest, the remedy is an appeal or writ of error, and the writ of *mandamus* will not lie for its correction if the court has jurisdiction of the subject matter and the parties.' *People ex rel. Barrett v. Shurtleff* (1933), 353 Ill. 248, 259-60; *People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1958), 12 Ill. 2d 515, 523.
>
> *Mandamus* should not issue where its object is to circumvent the normal appellate process. (*People ex rel. Sears v. Romiti* (1971), 50 Ill. 2d 51, 55; *People ex rel. Castle v. Spivey* (1957), 10 Ill. 2d 586, 591.) *Mandamus* does not lie where the result is to fragment the appeal. (*People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark*

(1958), 12 Ill. 2d 515, 523; *People ex rel. Clark v. McRoberts* (1881), 100 Ill. 458, 561.) The proper remedy for errors in the trial proceedings is an appeal, not a petition for writ of *mandamus. People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1958), 12 Ill. 2d 515, 520.

Highly analogous is a motion for change of venue. Although the motion may be improperly denied, *mandamus* will not lie to review such an order. In *People ex rel. Clark v. McRoberts* (1881), 100 Ill. 458, 461, this court, in denying an original application for leave to file a petition for a writ of *mandamus* from a denial of a change of venue, noted:

> 'After an examination of the authorities, and the briefs of the parties, we are of opinion that the writ will not lie. \*\*\* If the writ was allowed in this case compelling the court to enter a mere interlocutory order, we see no reason why it might not be asked for and granted in every case while the suit was progressing, compelling the court to enter particular orders. In other words, it would be to bring up the case in fragments from the court below, and have every ruling of that court passed upon during the progress of the case, and in that way bring cases before the court where there was no final judgment or determination in the court below.' "

So also section 6 of the Federal Employers' Liability Act (45 U.S.C. sec. 56 (1970)), providing that an action may be brought in the district in which the defendant shall be "doing business" at the time of the commencement of the action and that the jurisdiction of the courts of the United States shall be concurrent with that of the State courts, controls this action under the FELA. See *Miles v.*

*Illinois Central R.R. Co.* (1942), 315 U.S. 698, 86 L. Ed. 1129, 62 S. Ct. 827; *Baltimore & Ohio R.R. Co. v. Kepner* (1941), 314 U.S. 44, 50, 86 L. Ed. 28, 31-32, 62 S. Ct. 6, 8.

While I concur in the result in this case, a comparison of the majority opinion here with the majority in *Baltimore & Ohio R.R. Co. v. Mosele* will make manifest many inconsistencies between the two.