**Julio C. CASAS, personal representative of the Estate of Juan Antonio Casas, Deceased, Plaintiff-Appellant,**

v.

**The ROYAL BANK OF CANADA, a foreign bank, Defendant-Appellee.**

No. 78–1852.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1979.

Decided June 2, 1980.

Miles N. Beermann, Chicago, Ill., for plaintiff-appellant.

Robert H. Wheeler, Chicago, Ill., for defendant-appellee.

Before PELL, BAUER, Circuit Judges, and HOFFMAN, Senior District Judge.*

* The Hon. Walter E. Hoffman, Senior Judge of the United States District Court for the Eastern District of Virginia is sitting by designation.

1. This stratagem was devised by Casas to protect his substantial assets on deposit at various banks situated in Cuba from confiscation anticipated as a result of the nationalization of the banks and concomitant expropriation of assets by the Castro government. Casas' prescience

BAUER, Circuit Judge.

Plaintiff-appellant Julio C. Casas appeals from the order of the district court dismissing his amended complaint against defendant-appellee The Royal Bank of Canada (Bank) for lack of in personam jurisdiction. The sole issue on appeal is whether the Bank is amenable to service of process within the State of Illinois, thereby subjecting it to the jurisdiction of the federal district court sitting in Illinois. We hold that a sufficient basis existed for the assertion of personal jurisdiction over the defendant in Illinois and accordingly reverse the judgment appealed from for the reasons set forth below.

## I

On September 1, 1959, Juan Antonio Casas, father of the plaintiff and a Spanish national then residing in Cuba, drew a 36,-000 pesos check against his account with The Royal Bank of Canada at its office in Havana, Cuba. The Bank certified the check, which Casas endorsed and subsequently had the endorsement notarized.[1] Juan Antonio Casas died on August 8, 1962 in Havana, Cuba. His family discovered the check and on December 3, 1962 presented it to the Bank for payment, but the Bank refused to honor the check. In 1965 the plaintiff, Julio C. Casas, was issued an exit permit from Cuba to this country and assumed residence in Florida. On March 1, 1977, the plaintiff was appointed personal representative of his father's estate by a Florida probate court and in that capacity he commenced the present action on May 24, 1977 in the Circuit Court of Cook County, Illinois, seeking to impose liability against the Bank for its failure to honor the certified check.[2]

in matters of State apparently failed him in his personal financial affairs. Nationalization of the banks occurred on October 13, 1960, and to date Casas' family has not succeeded in obtaining payment on the check.

2. The amended complaint sought to collect the original amount of the check plus interest which the plaintiff alleged to be equal to a total in United States dollars of $83,834.24.

The defendant is a Canadian banking corporation and has its principal place of business in Montreal, Quebec. Service of process was made on the Bank at its Representative Office in Chicago, Illinois. The Bank removed the action on the basis of diversity of citizenship to the federal district court for the Northern District of Illinois, and subsequently moved to dismiss the amended complaint on the grounds that there was no basis for the exercise of personal jurisdiction and that the complaint was barred by the statute of limitations governing the plaintiff's cause of action on the instrument.

Relying on this Court's decision in *Lindley v. St. Louis-San Francisco Ry. Co.*, 407 F.2d 639 (7th Cir. 1968), the district court granted the motion to dismiss for lack of in personam jurisdiction because it regarded the defendant's activities within the State of Illinois as mere solicitation of business and accordingly insufficient to establish personal jurisdiction over it in Illinois. From this adverse judgment, the plaintiff has appealed to this Court.

## II

As noted above, the issue on appeal is whether the Bank is amenable to service of process in the State of Illinois and therefore subject to the jurisdiction of the federal court sitting in Illinois. Resolution of this question turns on the determination of whether the activities of the Bank's Representative Office in Chicago are sufficient, within the meaning of the applicable Illinois process statute and the due process clause of the Fifth Amendment, to require it to defend this action in Illinois. We therefore consider the pertinent state and federal court decisions construing these statutory and constitutional authorities.

The question whether a State may appropriately assert in personam jurisdiction over a foreign corporation has been the subject of frequent litigation. Recently, in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Supreme Court reaffirmed that the cornerstone of the evolving constitutional standard for acquiring personal jurisdiction over a foreign defendant is *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The standard prescribed by *International Shoe* was that in order to subject a foreign corporate defendant to in personam jurisdiction, due process only requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional concepts of fairness and substantial justice. *Id.* at 316, 66 S.Ct. at 158. Assuming due process is satisfied, the decision whether to accept or decline jurisdiction remains with the legislature and courts of the forum state. *Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437, 448, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952).

The statutory authority upon which service of process is predicated in this case is Section 13.3 of the Illinois Civil Practice Act, which provides that a foreign corporation may be served with process by leaving a copy with any agent found anywhere within the state.[3] Ill.Rev.Stat. ch. 110, § 13.3 (1977). There is no dispute that the Bank was duly served with process in accordance with the provisions of Section 13.-

---

Also named as a defendant in the amended complaint was The Bank of Nova Scotia for its alleged failure to honor certified checks totalling $2,388,454.21 drawn by Juan Antonio Casas on his account at that bank during the years 1953 to 1960. The district court dismissed the complaint against The Bank of Nova Scotia on the ground that the plaintiff's cause of action was barred by the statute of limitations. The appeal from that judgment was affirmed in an unpublished *per curiam* order of this Court on May 23, 1980. *Casas v. The Bank of Nova Scotia*, 622 F.2d 592 (1980).

**3.** Section 13.3 of the Illinois Civil Practice Act states in relevant part:

*Service on private corporations*
A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State;

. . . . .

Ill.Rev.Stat. ch. 110, § 13.3 (1977).

3.[4] The plaintiff submits that by maintaining an office within Illinois and by virtue of the activities undertaken by the Bank in connection therewith, the defendant is properly subject to the jurisdiction of the Illinois state and federal courts. The defendant contends, however, that it is not amenable to process pursuant to Section 13.3 for two reasons. First the Bank argues that the Illinois doctrine of "mere solicitation," recognized by this Court in *Lindley v. San Francisco-St. Louis Ry. Co.*, 407 F.2d 639 (7th Cir. 1968), precludes process on agents who are only soliciting business on behalf of a foreign defendant. Second, the Bank argues that its activities in Illinois are so insubstantial that requiring it to defend this suit in Illinois offends due process. We therefore turn to an analysis of the defendant's contacts with the forum state to determine whether the maintenance of this litigation would be inconsistent with the Illinois mere solicitation rule and the due process standard enunciated in *International Shoe* and its progeny.

The inquiry into the reasonableness of a state's jurisdiction over a foreign corporation in each case focuses not on a mechanical or quantitative analysis of the defendant's activities in the forum but on a qualitative evaluation of its contacts with the forum state. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The record with respect to the quality and nature of the defendant's activities in Illinois consisted of the deposition of Donald D. Stewart taken by counsel for the plaintiff, and Stewart's affidavit filed by counsel for the defendant with its memorandum in support of its motions to dismiss. In the affidavit Mr. Stewart stated (1) that the Bank "does not now and has never transacted any banking business within the State of Illinois," and (2) that no Illinois employee of the Bank "has been or is authorized to accept any banking service or to enter into any contract on behalf of The

Royal Bank of Canada in the State of Illinois." However, Mr. Stewart's deposition testimony contradicts these statements.

In his deposition, Stewart testified that he is 59 years of age and a Canadian citizen residing in a Chicago suburb. He has been employed by the Bank for 40 years, and has served in their Chicago office since 1962 under the title of "Representative." He also stated that the Bank operates 1500 offices worldwide, including five in the United States, and that since 1945 the Bank has maintained a Chicago office, which is currently staffed with six employees. The business transacted out of the Chicago office by these employees consists of the solicitation of new business, the expansion of present business and the retention of existing accounts.

Stewart further testified that, by his estimation, in excess of 1,000 accounts might be dealt with from the Chicago office and that these accounts are for customers located in a territory comprising nine midwestern states assigned to the Chicago office. The four male employees who staff the Chicago office, including himself, are referred to as "Representatives" and they travel throughout this nine-state region and to Canada on behalf of the Bank. The Chicago office maintains a file on each account or customer in the territory.

Some of the services that Stewart has performed from the Chicago office for customers of the Bank are arranging for loans, handling the documents related to the loans, facilitating the cashing of checks for Canadian customers of the Bank with a correspondent Chicago bank, and calling on customers in Chicago to determine whether their account with the Bank is being handled properly.

Mr. Stewart also facilitates the opening of new accounts with the Bank, which includes providing the necessary documents to the customer, and either having the account signature cards signed in the Chica-

---

4. Since the cause of action did not arise from a transaction occurring in Illinois, Section 17(1) of the Illinois Civil Practice Act, commonly known as the Long Arm Statute, is inapplicable. Ill.Rev.Stat. ch. 110, § 17(1) (1977).

Moreover, plaintiff's arguments concerning the "judicial merger" of Sections 13.3 and 17(1) of the Act are properly addressed to the Illinois legislature.

go office, or mailed to the Chicago office after signature, or having the cards signed at the customer's place of business within the territory.

He also testified that customers of the Bank in Chicago are charged for maintaining a checking account, that individuals also visit the Chicago office to discuss such matters as investments of funds in Canada and problems with the exchange rate, that he inquires of customers who close their accounts as to the reasons for so doing, and that the Representatives in the Chicago office have been called upon by one of the Bank's branches to intercede with customers whose accounts are overdrawn and the Representatives have in turn advised the customers to deposit sufficient funds in their accounts to cover the overdrafts.

On the basis of the foregoing synopsis of the composition and conduct of the defendant's Chicago office personnel, we conclude that its presence in Illinois constitutes sufficient minimum contacts to expose it to the same service of process as resident corporations, and that its corporate activities conducted in Illinois constitute more than mere solicitation of business.

### III

Nor do we regard *Lindley v. St. Louis-San Francisco Ry. Co.*, 407 F.2d 639 (7th Cir. 1968), as requiring a contrary result. In *Lindley* we held that:

> No Illinois case has been, or can be, so far as research shows, cited which holds that mere business solicitation from which the alleged cause of action *does not arise* is sufficient to render a foreign corporation amenable to Illinois in personam process, even though that solicitation has been continuous and systematic.

407 F.2d at 642 (emphasis in original). We therefore declined in that case to depart from a long standing rule announced by the Illinois Supreme Court in *Booz v. Texas & Pacific Ry. Co.*, 250 Ill. 376, 95 N.E. 460 (1911) that "mere solicitors are not agents, within the meaning of the statute." *Id.*, 95 N.E. at 461.

Recent Illinois Supreme Court decisions have reaffirmed the vitality of this rule.

*St. Louis-San Francisco Ry. Co. v. Gitchoff*, 68 Ill.2d 38, 11 Ill.Dec. 598, 369 N.E.2d 52 (1977), was a mandamus action wherein the railroad contested jurisdiction over it in the Illinois courts. The defendant railroad was a Missouri corporation which was not licensed to do business in Illinois and owned no trackage in Illinois. Although the railroad maintained a sales office staffed with seven employees in Chicago, Illinois, service of process was made pursuant to Section 13.3 on the railroad's agent at a terminal facility in southern Illinois. The Illinois Supreme Court found the railroad to be doing business in Illinois because the agent had spent the majority of his working time during the preceding ten years in Illinois coordinating and expediting the movement of the defendant's railroad cars into and out of Illinois, which operation was the source of and essential to the defendant's substantial Illinois revenue. The court therefore concluded that the defendant's activities within Illinois went beyond mere solicitation and constituted substantial business sufficient to subject it to in personam jurisdiction. *Id.*, 11 Ill.Dec. at 601, 369 N.E.2d at 55.

Later, in *Braband v. Beech Aircraft Corporation*, 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978), the Illinois Supreme Court was confronted with a factual situation involving wrongful death actions filed on behalf of Illinois decedents against a Kansas manufacturer of their aircraft which had crashed in Canada on a flight originating from Illinois. The foreign corporate defendant was served pursuant to Section 13.3 of the Illinois Civil Practice Act by leaving a summons with its independent distributor in Illinois. The court held that the defendant's activities in Illinois, designed to effect sales of its products to Illinois residents, constituted sufficient minimum contacts with the forum state to expose it to in personam jurisdiction under Section 13.3. These contacts included, *inter alia*, the defendant's contract with the distributor which permitted the distributor to sell the defendant's products within a certain territory and required the distributor to perform warranty, maintenance and re-

pair service on its products. The court also regarded as significant the fact that the contract permitted the defendant to inspect the distributor's complete operation, the fact that the defendant's marketing manager frequently visited the distributor with the express purpose of promoting sales of the defendant's aircraft, the fact that the defendant had sponsored a sales program in Illinois for sales to prospective customers, and that the defendant had advertised in telephone directories in the state.

In the case at bar, we hold that the record discloses sufficient contacts by the defendant with the forum state such that requiring it to defend this action in Illinois does not offend due process. The defendant has maintained an office in Illinois since 1945, and its Illinois employees are engaged in the solicitation as well as the sale of the defendant's products and services in Illinois. We further hold that the defendant is amenable to process pursuant to Section 13.3 of the Illinois Civil Practice Act and accordingly subject to in personam jurisdiction.

For the foregoing reasons, the judgment appealed from is reversed, and the cause is remanded for further proceedings. The Clerk of this Court is directed to enter judgment accordingly.

REVERSED AND REMANDED.