(No. 15449.—Judgment affirmed.)

The American Hide and Leather Company, Defendant in Error, *vs.* The Southern Railway Company, Plaintiff in Error.

*Opinion filed December 19, 1923—Rehearing denied Feb. 8, 1924.*

1. Carriers—*when soliciting agent of railroad company may be served with process under section 8 of Practice act.* An agent of a foreign railroad corporation who is employed to solicit business solely for his principal, and who occupies in the city of Chicago an office furnished by the company, may be served with process so as to give jurisdiction over the defendant corporation in Cook county, where the company, although it has no railroad in Cook county, operates several miles of railroad in other counties of the State. (*Booz* v. *Texas and Pacific Railway Co.* 250 Ill. 376, distinguished.)

2. Same—*section 23 of the Uniform Bills of Lading act construed—pleading.* Section 23 of the Uniform Bills of Lading act is intended to give security to bills of lading in the hands of those who parted with value in good faith relying on them to be true,

and precludes the carrier issuing such bill from defending on the ground that the goods were not received by it; but one suing to recover the value of lost goods need not allege and prove that the bill of lading was issued by the defendant without receiving the goods for shipment.

3. SAME—*bills of lading should contain blanks required by section 10 of Uniform Bills of Lading act.* A defendant railroad company cannot claim its liability was limited to loss occurring on its own line, as stated in the conditions printed on its bill of lading, where the bill of lading as issued did not contain the blank spaces required by section 10 of the Uniform Bills of Lading act within which the consignor is required to write objections to the conditions within three hours after receiving the bill.

4. SAME—*section 23 of Uniform Bills of Lading act is valid and does not create new cause of action.* Section 23 of the Uniform Bills of Lading act does not create a new cause of action but merely deprives the carrier which has issued a bill of lading of the defense that it did not receive the goods; and the statute is not subject to any constitutional objection.

WRIT OF ERROR to the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

EDWARD C. KRAMER, RUDOLPH J. KRAMER, BRUCE A. CAMPBELL, EDWARD D. POMEROY, and HENRY T. MARTIN, (EDWARD P. HUMPHREY, of counsel,) for plaintiff in error.

WINSTON, STRAWN & SHAW, (WALTER H. JACOBS, and SILAS H. STRAWN, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This action was brought by the American Hide and Leather Company in assumpsit against the Southern Railway Company, in the superior court of Cook county, to recover the value of two car-loads of green hides for which bills of lading were issued to the plaintiff by the defendant at Mt. Vernon, Illinois, June 25, 1920. The bills recite that one car contained 2105 bundles and the other 1908 bundles

of salted green hides, to be transported to Chicago. When the cars arrived at their destination they contained but 16 bundles of hides. The remainder of them was never received. The hides were purchased by plaintiff from Max Cornick & Co. at Mt. Vernon. Plaintiff paid Cornick & Co. $23,921.67, relying upon the bills of lading. The hides which reached their destination were worth $98.70, and plaintiff sued to recover the difference between the amount paid Cornick & Co. and the value of the hides received. The court instructed the jury to find the issues for plaintiff and assess its damages at $23,822.97 and rendered judgment on the verdict so returned. Defendant prosecuted an appeal to the Appellate Court, where the judgment was affirmed, and this court granted a writ of *certiorari* to review the judgment.

The facts are, that some time in June, 1920, plaintiff had some correspondence with Max Cornick & Co., dealers in green hides, about the purchase of a quantity of hides, and sent its agent, Cooper, to Mt. Vernon on June 21. The hides were in the warehouse of Cornick & Co., which was near a side-track of defendant. Cooper spent three or four days in the warehouse separating, grading and weighing the hides which were to be shipped to plaintiff. They were put up in bundles and loaded by employees of Cornick & Co. on its wagons and driven from the warehouse to the cars they were to be loaded in. They were weighed by Cornick under the observation of plaintiff's agent, Cooper, before they were removed. Cooper made invoices of the hides, their weight and prices, in the warehouse as they were inspected, graded, weighed and loaded out. These invoices were signed by Cornick & Co. and O. K.'d by Cooper. Cooper did not superintend the loading of the hides into the cars. He saw the wagons leave the warehouse, drive along the side of the cars and some hides thrown into them. He saw some hides in the door of one or both cars. After they were hauled away from the warehouse to the

cars and ostensibly loaded in them the cars were closed and sealed, the doors were nailed at the bottom and a two-by-four timber spiked behind each of the doors so that they could not be opened without drawing the nails and removing the timbers. They were sealed by defendant's agent. After that was done Cornick procured two bills of lading from defendant's agent and exhibited them to Cooper, who thereupon gave Cornick two drafts on plaintiff, one for $12,469.01, the other for $11,452.66, payable at New York and dated June 25, 1920. Cooper retained a duplicate copy of the bills of lading. Cornick attached the drafts, together with the invoices, to the original bills, and they were sent through his bank at Mt. Vernon to a bank in New York for payment by plaintiff. Plaintiff's cashier, on their presentation, checked the amount of the invoices and bills of lading and thereupon paid the drafts, amounting to $23,921.67.

The suit was begun in Cook county and summons served on defendant by delivering a copy to R. H. Morris, agent of the corporation. Defendant filed a plea to the jurisdiction of the court, alleging Morris was not its agent; that defendant is a railroad corporation organized under the laws of Virginia, having its principal office at Richmond, in that State, and owns, operates and controls a line of railroad running through the counties of Wabash, Edwards, Wayne, Jefferson, Clinton and St. Clair, in the State of Illinois, in each of which it had an agent upon whom process could be served, and that defendant was not found or served with process in Cook county. Plaintiff filed a replication, alleging Morris, at the time of service of process and before, was the agent of defendant and was served in Cook county. That issue was tried before the court without a jury. The court found that issue against defendant and held the service of summons to be sufficient and in accordance with law. The evidence on the issue of jurisdiction was that Morris was employed to solicit freight shipments to be transported in connection with carriers so that the

freight would move over defendant's railroad. He had ten or more stenographers, clerks and soliciting agents employed under him in an office at 35 West Jackson boulevard, Chicago. Their salaries were paid by defendant. It operates a railroad through the State of Illinois from Mt. Carmel to East St. Louis, (about 140 miles,) and no part of which is in Cook county. The name "Southern Railway System" was on the door of the office at 35 West Jackson boulevard. The bills of lading showed they were issued by defendant at Mt. Vernon for transportation of the property described from that place to Chicago, where one of the cars arrived July 13 and the other July 16, and when opened each car contained only eight bundles of hides.

Morris occupied an office of two rooms furnished by defendant, and his salary and the salaries of his assistants were paid by defendant. He was not employed as soliciting agent for any other company. He made no contracts on behalf of defendant, issued no bills of lading, sold no tickets and collected no money for defendant. Defendant insists Morris had no power to exercise any of defendant's corporate powers and was not an agent within the meaning of section 8 of the Practice act but was a mere employee to solicit business. Reliance is placed on *Booz* v. *Texas and Pacific Railway Co.* 250 Ill. 376. In that case service was had on a man as agent of the defendant railroad corporation. A limited appearance was entered and motion to quash the return was made, alleging Pither, the man on whom summons was served, was an employee of one Staley, a soliciting freight agent, and Farnsworth, a soliciting passenger agent, of several foreign railroads, including defendant, operating railroads outside of the State; that all the employees and business were under control of Edward B. Boyd, who was not an officer of the corporation although called assistant to the vice-president; that the only business transacted through the Chicago office by employees there was soliciting shipments over the lines of the corporation

and soliciting passengers to purchase tickets to pass over its lines outside the State. This court held that whether Pither was the agent of defendant on whom process was authorized to be served, depended on whether defendant had extended its business into this State so as to be constructively present here and was transacting that business through Pither as agent; that defendant being a foreign corporation could only be served in this State if it was doing business here, and no one would be its agent unless he had power to represent it in the transaction of some part of the business contemplated by its charter. No one in this State could make a contract to bind defendant, and the court said the mere solicitation of business by one who had no other authority did not constitute doing business in this State. Such solicitors were not agents within the meaning of the statute. The court further held the statute was not confined to domestic corporations; that if a foreign corporation is present in this State and has an agent here, process may be served on it. "A business corporation is constructively present in any State where it has property and carries on its operations by means of agents, although the domicile of the corporation is in another State. If a foreign corporation does business in the State through agents, it may be sued there by obtaining service on the agent." We do not think that decision supports defendant in this case. Here defendant was doing business in this State. It operates 140 miles of its railroad in Illinois and is subject to service in the same manner as an Illinois corporation. The court did not err in holding it had jurisdiction.

Defendant contends the declaration states no cause of action and the trial court erred in not so holding and rendering judgment in its favor. The cause was tried on an amended additional count to the declaration and pleas thereto. The count alleged, in substance, that defendant issued bills of lading, which are set out in full, by which it ac-

310—34

knowledged receipt of the hides at Mt. Vernon from Max Cornick & Co. in apparent good order, and promised to safely transport them to Chicago and deliver them to plaintiff within a reasonable time. It is insisted the declaration does not state a cause of action at common law on the theory that plaintiff delivered the hides to defendant and defendant negligently failed to transport them; also that it does not state a cause of action for which defendant would be liable under section 23 of the Uniform Bills of Lading act, because it was not alleged the bills of lading were issued by defendant without receiving the hides. Section 23 of the Uniform Bills of Lading act, (Smith's Stat. 1923, chap. 27,) provides, in part, that when a carrier by its agent or employee, the scope of whose employment includes the issuing of bills of lading, has issued a bill of lading, it shall be liable to the consignee named in a non-negotiable bill, or the holder of a negotiable bill, who has given value in good faith, relying on the description therein of the goods, for damages caused by the carrier or a connecting carrier of all or part of the goods, or their failure to correspond with the description in the bill. Prior to the enactment of the Uniform Bills of Lading act, in 1911, a carrier who had issued a bill of lading acknowledging receipt of goods could defend against the action by showing the goods had not been received by it. (*Lake Shore and Michigan Southern Railway Co.* v. *Live Stock Bank,* 178 Ill. 506.) Section 23 deprived the carrier of that defense. We do not think it was necessary for plaintiff to allege and prove that defendant did not receive the hides. It would be difficult, if not impossible, in many cases for the holder of the bill who had in good faith parted with value in reliance upon its correctness to prove the carrier did not receive the goods described in the bill, the receipt of which had been acknowledged by the carrier. The purpose of the statute was to give security to bills of lading in the hands of those who parted with value in good faith, relying on them being true.

A Federal bill of lading act contains a provision substantially like section 23, applicable to interstate commerce. These laws were enacted because of the fraudulent acts of agents of carriers issuing bills of lading without receiving the goods described in the bill and receipting for them. (1 Roberts on Federal Liabilities of Carriers, sec. 351.) The proof showed plaintiff's agent, Cooper, had nothing to do with the actual loading of the hides. He inspected, graded, superintended the bundling and weighing of the bundles in the warehouse of Cornick & Co., and the hides were hauled by Cornick's men and teams to the cars on defendant's track. He made invoices, which were signed by Cornick and O.K.'d by him, and when Cornick procured and exhibited the bills of lading Cooper gave him the drafts on plaintiff in payment for the hides. The evidence, we think, tends to show that only the small number of hides in the cars when they were received in Chicago were in the cars when they were sealed at Mt. Vernon. It is needless to speculate on how the hides happened to be missing when the cars were sealed, but there is no evidence tending in any way to show Cooper had any knowledge they were not in the cars or that he in any manner connived with anyone to seal and ship the cars without the hides being in them.

No case involving section 23 of our Uniform Bills of Lading act has been heretofore adjudicated by this court, and we are referred to no decision of a court of last resort where the direct question here presented was involved, although many States have statutes like ours. In *Johnson Lumber Co.* v. *Great Northern Railway Co.* 104 Wash. 354, the action was to recover the value of a car-load of shingles described in a bill of lading issued by an agent of the railroad company. The defense was that the shingles had never been received or shipped by the railroad company. The court held the company, by issuing the bill of lading acknowledging the receipt of the shingles, made it possible for an owner of the bill to believe the company had received

the property and pay value therefor, and the court said one who makes it possible to cause a loss should bear it where otherwise it would fall upon an innocent party.

Defendant further contends as its line of railroad in this State only extends from Mt. Carmel to East St. Louis its liability was limited to loss occurring on its own line, and relies on section 3 of the Uniform Bills of Lading act in support of that contention. Section 10 of the same act, among other things, binds a person receiving a bill of lading to the terms and conditions of the bill not contrary to law or public policy unless objected to in writing within three hours after receiving it, and requires that all bills of lading shall have blank forms attached for such objections. The bills of lading issued by defendant contained no such blank forms. They did contain provisions that no carrier in possession of the property should be liable for the act or default of the shipper or for loss or damage not occurring on its own line or portion of the through route, nor after the property had been delivered to the next carrier. The hides were consigned to plaintiff at Chicago, "Route C. B. & Q. via C. & N. W., North Avenue station." The evidence does not show the loss occurred by the default of plaintiff, nor that the bills of lading contained the blank forms for objections required by section 10 of the statute. Defendant is not in a position to claim its liability was limited to loss occurring on its own line if that were a material question, but under the facts proved we do not think that material to the decision of the case, for, as we have said, the conclusion is justified from the evidence that the hides were not in the cars when the bills of lading were issued and the cars shipped. In our opinion the declaration stated a good cause of action. Section 23 does not create a new cause of action but merely deprives the carrier of a defense which it was allowed to make before that enactment, and

the statute, in our opinion, is not subject to any constitutional objection.

It is also contended by defendant that the hides had been purchased by plaintiff by correspondence before it sent its agent to Mt. Vernon to receive them; that the title passed to plaintiff in the warehouse as soon as they were inspected and separated, before the bills of lading were issued, and if Cornick procured the bills of lading he did so as agent of plaintiff in shipping its own property. We do not think this position sustained by the proof. Plaintiff never paid for or intended to pay for the hides until they were in possession of defendant. Its agent, so far as the proof discloses, thought they were loaded in the cars on defendant's track. Cornick secured and presented to plaintiff's agent the bills of lading, whereupon he gave Cornick the drafts, which plaintiff in good faith paid, relying on the bills. It is not shown by the proof that defendant's agent at Mt. Vernon inspected the cars before they were sealed, to ascertain whether the hides were in them, or whether he relied on Cornick's representations. At all events, Cornick procured him to issue the bills and exhibited them to plaintiff's agent before the latter would pay for the hides. There was no proof to sustain defendant's plea that plaintiff's agent, Cooper, was guilty of any fraud in securing defendant's agent to issue the bills of lading after the cars were sealed and fastened, without knowing whether the hides described in the bills were in the cars.

We are of opinion there was no error committed in the admission and rejection of evidence and in directing a verdict for plaintiff.

The judgment is affirmed.   *Judgment affirmed.*