LARRY STEPHENS, Plaintiff-Appellee, *v.* NORTHERN INDIANA PUBLIC SERVICE CO., Defendant-Appellant.

Fifth District   No. 79-244

Opinion filed August 21, 1980.

HARRISON, J., dissenting.

Burton C. Bernard, of Bernard & Davidson, of Granite City, for appellant.

David H. Adamson, III, and Lawrence Hartman, both of Callis & Hartman, P. C., of Granite City, for appellee.

Mme JUSTICE SPOMER delivered the opinion of the court:

This is an interlocutory appeal from an order of the Circuit Court of Madison County overruling the objection that it had no *in personam* jurisdiction over defendant-appellant Northern Indiana Public Service Company (NIPSCO).

Plaintiff-appellee Larry Stephens, an employee of Babcock and Wilcox Construction Company, was injured on March 26, 1974, while working on a construction project at defendant's Bailly Generating Station in Porter County, Indiana. He filed suit against NIPSCO in Madison County, Illinois, alleging that the Indiana corporation was doing business in the State of Illinois and was liable to him for its failure to provide him with a safe place to work.

After being served with process in LaPorte County, Indiana, on July 2, 1975, NIPSCO entered a special appearance, supported by affidavits of certain of its officers, objecting to the jurisdiction of the court over its person. (Ill. Rev. Stat. 1973, ch. 110, par. 20.) According to the supporting affidavits, the defendant is an Indiana public utility corporation engaged in the business of supplying electricity and natural gas, on an intrastate basis only, in the northern part of Indiana, as authorized by the Public Service Commission of Indiana. It provides no utility service in Illinois, maintains

no office in Illinois, has no regulatory authority from the Illinois Commerce Commission, is not licensed to do business in Illinois, and does no business in Illinois. The Bailly Generating Station generates electricity which is sold by NIPSCO to customers located within the State of Indiana, and its physical plant is located entirely within the State of Indiana. The affidavits further set forth the extent of NIPSCO's contacts with Illinois.

After the court below denied the jurisdictional objection, it entered a written statement pursuant to Supreme Court Rule 308(a) that its interlocutory order raised a question of law as to which there was substantial grounds for difference of opinion and that an immediate appeal from the order might materially advance the ultimate termination of the litigation. (Ill. Rev. Stat. 1977, ch. 110A, par. 308(a).) The question of law identified by the trial court and presented to us on the appeal is as follows:

"Does the Madison County, Illinois, Circuit Court have jurisdiction over the person of an Indiana corporation, doing business as an intrastate Indiana public utility, served with summons in Indiana in a suit brought by a person for personal injuries arising out of an accident which occurred during a construction project at the utility's Bailly Generating Station in Porter County, Indiana—the only contacts of the utility in Illinois being: (1) the utilization of banks in Chicago, Illinois, which are independent of the utility, through contractual arrangements, as depositories, disbursing agents for some of the utility's funds, as trustees under a mortgage on certain real estate owned by the utility and located in Indiana, as trustees of the utility's pension fund, and as stock transfer agents; (2) the utility's being party to an interconnection agreement between it and a second, unrelated Indiana corporation, pursuant to which agreement electrical power which is generated in Illinois may be purchased by the utility from said second Indiana corporation and electrical power generated by the utility may be sold to said second Indiana corporation which may transmit the power into Illinois; (3) ownership of natural gas pipelines located in Indiana which connect with interstate natural gas pipelines running between Illinois and Indiana and owned by entities independent of said utility?"

We granted the defendant's timely application for leave to appeal and now reverse.

No findings were made by the trial court to indicate the legal premise upon which it based jurisdiction. Plaintiff primarily contends that defendant was doing business on a substantial and continuous basis in Illinois and therefore was "sufficiently present" in Illinois to be served as other resident corporations under sections 13.3 and 16 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, pars. 13.3 and 16). He also asserts jurisdiction is estab-

lished by section 17, but does not specify whether he is relying on section 17(1)(a) (the transaction of any business within this State) or section 17(1)(b) (the commission of a tortious act within this State). The relevant statutes in pertinent part provide:

"§13.3. **Service on private corporations.**

A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals." Ill. Rev. Stat. 1971, ch. 110, par. 13.3.

"§16. **Personal service outside State.**

(1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication." Ill. Rev. Stat. 1971, ch. 110, par. 16(1).

"§17. **Act submitting to jurisdiction—Process.**

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State.

* * *

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this Section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section." Ill. Rev. Stat. 1971, ch. 110, par. 17.

The nature and extent of defendant's business activity in the State of Illinois must be determined from the question of law submitted by the trial court and the affidavits of defendant's officers contained in the record. Although plaintiff's attorney made an "affidavit in opposition," in which he

attempted to state certain facts to support his argument that defendant was "doing business in Illinois," it is clear from the question of law submitted to us that the trial court did not rely on those facts. The affidavit failed to meet the requirements of Supreme Court Rule 191(a),[1] as it was made on information and belief only, and shows on its face that he could not competently testify at the trial to those matters[2] (*Wicks v. Bank of Belleville* (1977), 56 Ill. App. 3d 222, 371 N.E.2d 1007). In *Wicks*, the court considered an affidavit in opposition to a motion for summary judgment, such motion having the same requirements under Rule 191(a) as those made to contest jurisdiction over the person. The court there stated at page 228:

> "Defendant's affidavit was not sufficient under the rule. The attorney for defendant who signed the affidavit did so on information and belief only. In *Anderson 'Safeway' Guard Rail Corp. v. Champaign Asphalt Co.*, 131 Ill. App. 2d 924, 266 N.E.2d 414, the court said of affidavits filed by an attorney:
>
> > 'The counter-affidavit filed by plaintiff's attorney * * * was not made on personal knowledge of the affiant. This affidavit, on its face, showed that affiant could not competently testify at the trial to the cause of the matters therein stated, as required by Supreme Court Rule 191(a) (Ill. Rev. Stat., 1979, ch. 110A, par. 191(a)). Unsupported conclusions in an affidavit in support of a motion for summary judgment are insufficient to raise a genuine issue of material fact. [Citations.]
> >
> > \* \* \*
> >
> > Mere allegation that a triable issue of facts exists does not create an issue of fact. [Citations.] Nor is an affidavit by a party's attorney to be tested by any different rule than that of any other affiant.' "

■ We note further that where jurisdiction is denied by the defendant, the burden of proving its presence rests on the party asserting it. *O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173, 1177; *Houghton v. Piper Aircraft Corp.* (1975), 112 Ariz. 365, 367, 542 P.2d 24, 26; *Williams v. Connolly* (D. Minn. 1964), 277 F. Supp. 539.

---

[1] "Requirements. ° ° ° [A]ffidavits submitted in connection with a special appearance to contest jurisdiction over the person, ° ° ° shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto ° ° °." 73 Ill. 2d R. 191(a).

[2] This affidavit is not included in the record on appeal, but is found in plaintiff's appendix to his brief.

Although the complaint alleges that defendant was "doing business in the State of Illinois, pursuant to contracts with power companies in Illinois and through purchases made in Illinois," the facts stated in the question of law and in the defendant's affidavits show otherwise. The record does not disclose "contracts with power companies in Illinois," but rather an interconnection agreement between defendant and an unrelated Indiana corporation, Commonwealth Edison Company of Indiana, Inc. The record discloses no "purchases made in Illinois." If plaintiff is referring to purchases of electricity, the record discloses that none was purchased in Illinois, but only in Indiana from this Indiana corporation. The record does not disclose where any of the contracts were made, nor if any of them were made in Illinois. It does not disclose any information concerning the nature of the relationship between the independent entities who own and operate the natural gas interstate pipelines and the defendant.

■■ The Illinois Supreme Court has held that sections 16 and 17 are intended to expand *in personam* jurisdiction over nonresidents to the full extent permitted by the due process clause of the fourteenth amendment to the United States Constitution. (See, *e.g., Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 368 N.E.2d 88; *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.) For a State court to exercise personal jurisdiction over a nonresident defendant in a manner consistent with due process, there must exist certain minimum contacts between the defendant and the forum State such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) The contacts between a foreign corporation and the forum State must be such "as make it reasonable, in the context of our Federal system of government, to require the corporation to defend the particular suit which is brought there." 326 U.S. 310, 317, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.

■■ The central concern of any inquiry into personal jurisdiction must be the relationship among the defendant, the forum, and the litigation. (*Shaffer v. Heitner* (1977), 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698, 97 S. Ct. 2569, 2579.) The mere presence of property in a State, without other ties sufficient to satisfy the fairness standard of *International Shoe*, will not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action. (*Shaffer*, 433 U.S. 186, 209, 53 L. Ed. 2d 683, 700-01, 97 S. Ct. 2569, 2582.) Nor will financial benefits accruing to a defendant from a collateral relation to the forum State support jurisdiction absent constitutionally cognizable contacts making it both fair and reasonable that the defendant defend the particular lawsuit in that forum. *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.

■■ Plaintiff argues that "the employment of plaintiff within Illinois was the initiating factor creating the chain of events resulting in plaintiff's injury" and that "the substantial activities of the defendant within Illinois *when coupled with the employment of plaintiff in Illinois* is a sufficient nexus with Illinois to justify its imposition of jurisdiction upon the behalf of one of its residents." (Emphasis added.) We disagree. Plaintiff was not hired by defendant in Illinois or elsewhere, but by Babcock and Wilcox Construction Company, an independent contractor. The hiring of plaintiff in Illinois by a third party was entirely fortuitous, as far as defendant was concerned, and was completely unrelated to defendant's alleged business activities in Illinois. It is the acts of the *defendant*, not plaintiff, in Illinois that are relevant. *Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 742, 371 N.E.2d 161; *Stansell v. International Fellowship, Inc.* (1974), 22 Ill. App. 3d 959, 963, 318 N.E.2d 149; *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 350, 395 N.E.2d 1131.

The purpose of the phrase "arising from" in section 17(1) (and of section 17(3)) is to assure that there is a sufficiently close relationship between the nonresident defendant's business activities here and the cause of action against which he must defend. (*Volkswagen Insurance Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 624, 374 N.E.2d 954, 957; *First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 434, 352 N.E.2d 285, 291; *Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 252-53, 219 N.E.2d 646, 651.) As the court said in *Whittington*:

> "* * * [S]ection 17(1)(a) of the long arm statute does not confer jurisdiction over a foreign corporation doing business in Illinois in an action bearing no relationship to the business done in Illinois. [Citation.] Simply stated, doing business in Illinois, *by itself*, is not a sufficient contact with Illinois to trigger long arm jurisdiction under section 17(1)(a). The foreign corporation's business within Illinois must be related to the cause of action in question before section 17(1)(a) will confer personal jurisdiction. If none of this business gives rise, at least in part, to the cause of action in question, then no such jurisdiction exists." 58 Ill. App. 3d 621, 624-25, 374 N.E.2d 954, 957.

In *Chicago Film Enterprises v. Jablanow*, the court again expressed the rule as stated in *Chicago Silver Exchange v. United Refinery, Inc.* (N.D. Ill. 1975), 394 F. Supp. 1332, 1335, that "'section 17 [of the Illinois long-arm statute] clearly requires that the activities which are relied on to sustain jurisdiction must give rise to the suit in question, at least in part * * *.'" 55 Ill. App. 3d 739, 742, 371 N.E.2d 161.

Furthermore, *International Shoe* does not permit unlimited assertion of jurisdiction. Where the exercise of the privilege of conducting activities within a State gives rise to obligations, "*so far as those obligations arise out*

*of or are connected with the activities within the state,* a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." (Emphasis added.) *International Shoe,* 326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154, 160.

The United States Supreme Court recently discussed what constitutes an acceptable due process relationship among the defendant, the forum and the litigation in *Rush v. Savchuk* (1980), 444 U.S. 320, 62 L. Ed. 2d 516, 100 S. Ct. 571. In that case plaintiff, a resident of Indiana, was injured in an automobile accident in Indiana while riding as a passenger in a car driven by defendant, also an Indiana resident. After moving to Minnesota, plaintiff filed suit in that State, charging negligence. Defendant was personally served in Indiana. Plaintiff attempted to garnishee in Minnesota the contractual obligation of State Farm Mutual Automobile Insurance Company, who had issued defendant's liability insurance policy in Indiana. Defendant and State Farm moved to dismiss for lack of jurisdiction over defendant, and the motion was denied by the trial court. The Minnesota Supreme Court affirmed, and the United States Supreme Court reversed, relying on *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569. The court said:

> "In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner, supra,* at 204.
>
> * * * The only affiliating circumstance offered to show a relationship among Rush (defendant), Minnesota, and this lawsuit is that Rush's insurance company does business in the State. * * *.
> * * *
> Here, the fact that the defendant's insurer does business in the forum State suggests no further contacts between the defendant and the forum, and the record supplies no evidence of any. * * * In short, it cannot be said that the *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable, see *Kulko v. California Superior Court,* 436 U.S. 84, 93-94 (1978); *Hanson v. Denckla,* 357 U.S. 235, 253 (1958), merely because his insurer does business there." 444 U.S. 320, 327-29, 62 L. Ed. 2d 516, 524-25, 100 S. Ct. 571, 577-78.

▪▪ As in *Rush,* we think that it cannot be said that the defendant "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable." Plaintiff is attempting to assert jurisdiction over defendant based on activities, not of defendant, but of Illinois banks with whom it does business and—even further removed—on activities of an independent Illinois corporation (CE), who may do business with an independent Indiana corporation (CECI), who

may do business with the defendant. Nor can the connection of its intrastate pipeline in Indiana with an interstate pipeline running through Illinois be deemed a purposeful activity related to the forum State. The interstate pipeline no doubt runs through almost every State in the union—would that be a "contact" in each of those States sufficient to assert jurisdiction there? We think not.

Plaintiff argues that *in personam* jurisdiction in Illinois over foreign corporations is not limited to section 17. We agree. Jurisdiction may be asserted also under section 13.3 and section 16, or the common law. (See *Lindley v. St. Louis-San Francisco Ry. Co.* (7th Cir. 1968), 407 F.2d 639.) The test is whether the foreign corporation is "doing business" in the forum State; but in applying this test, the minimum contacts required by *International Shoe* must be met. Defendant must be put on such notice by his forum contacts that he will be considered "physically present" in Illinois and thus, a "resident" even though he is actually a nonresident. (*Shaffer*, 433 U.S. 186, 218, 53 L. Ed. 2d 683, 706-07, 97 S. Ct. 2569, 2587.) To give meaning to these abstract propositions of law, we must look at the factual situation in the case at bar and in other cases on which plaintiff relies. (See *St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 52; *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252; and *Connelly v. Uniroyal, Inc.* (1977), 55 Ill. App. 3d 530, 370 N.E.2d 1189, *aff'd in pt. & rev'd in pt.* (1979), 75 Ill. 2d 393.) In *Gitchoff*, where defendant's employee was served with process in Illinois, defendant maintained an office in Illinois and had full-time employees in Illinois. Its forum activities went beyond mere solicitation; over a 10-year period its assistant superintendent spent 60 to 80 percent of his working time in Illinois. As that court said: "He, in fact, is responsible for that aspect of the operation which is the very nature of the Railroad's business, the source of, and essential to, its substantial Illinois revenue." (68 Ill. 2d 38, 45-46, 369 N.E.2d 52.) *Braband* and *Connelly* were products-liability cases, where the defect in the product caused the injury. In *Braband* there were substantial contacts between defendant and the forum prior to the accident. In *Connelly* jurisdiction was upheld because defendant's tires, which were "introduced into the stream of commerce in obvious contemplation of their ultimate sale or use in other nations or states, came into Illinois on a regular basis and in substantial numbers * * *." (75 Ill. 2d 393, 406.) That court quoted from *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 442, 176 N.E.2d 761, 766: "it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here." The factual situation is entirely different in the case at bar. NIPSCO's business is supplying electricity and gas in northern Indiana; Indiana is the only State in which it is

licensed to do business. It has no employees nor offices in Illinois; it does not solicit business in Illinois. No defective product is involved. The banking activities carried on in Chicago do not produce revenues for defendant; they are not of the type of business for which the corporation was organized and are incidental to its main operation. We find that none of the activities mentioned in the question of law can be classified as the doing of a substantial and continuous part of its business in Illinois so as to make defendant a "resident." This finding is entirely consistent with our holding in *Blakey v. Commonwealth Edison Co.* (1977), 52 Ill. App. 3d 454, 367 N.E.2d 529, that defendant was not "doing business" in Madison County, where from time to time it sold electricity to other power companies through interconnection agreements which were part of a nationwide "grid" system and conceivably some of the power generated by defendant found its way to customers of other power companies in Madison County. *Blakey* is not controlling, however, because it involved a question of venue, rather than jurisdiction. Nor do we find that defendant has undertaken any special responsibility by these activities such that it would offend social or moral values of the State were defendant allowed to resist jurisdiction here.

In summary, we find that the plaintiff's cause of action for personal injuries sustained in a construction accident in Indiana has only the remotest and most attenuated of connections with the defendant's limited activities in Illinois. It would be neither reasonable nor fair to require the defendant to defend this litigation in Illinois. We therefore conclude that the due process clause prohibits the Circuit Court of Madison County from asserting jurisdiction.

For the foregoing reasons we answer the circuit court's question in the negative, reverse the order appealed from, and remand this cause with directions that the court below sustain the defendant's objection, quash the summons served on the defendant, and dismiss the cause for want of personal jurisdiction.

Reversed and remanded with directions.

KASSERMAN, J., concurs.

Mr. JUSTICE HARRISON, dissenting:
I respectfully dissent.
I believe that the contacts which NIPSCO has with Illinois, as set forth in the trial court's certification to this court, are a sufficient basis to conclude that defendant is "doing business" in the State of Illinois and is, therefore, subject to the *in personam* jurisdiction of our State courts. Notwithstanding the long-arm statute, which I agree is without application in this case, the test to be applied is as follows:

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.)

Since a corporation is involved, we must look to the activities of NIPSCO as carried on by its authorized agents.

"Whether due process is satisfied must depend * * * upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against * * * [a] corporate defendant with which the state has no contacts, ties, or relations." *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 319, 90 L. Ed. 95, 103-04, 66 S. Ct. 154, 160.

The majority correctly cites an inquiry into "the relationship among the defendant, the forum, and the litigation" (*Shaffer v. Heitner* (1977), 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698, 97 S. Ct. 2569, 2580), but seemingly construes that inquiry to mean that the business activities engaged in by the corporate defendant must give rise to the current cause of action now in litigation. This is simply incorrect. As the Supreme Court noted in the *International Shoe* case, "there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." (326 U.S. 310, 318, 90 L. Ed. 95, 103, 66 S. Ct. 154, 159.) The test is "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." (*Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.) If this occurs, "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. * * * [I]t has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567.

I believe that NIPSCO's use of Chicago, Illinois, banks via contractual arrangements as depositories, disbursing agents, trustees for a mortgage and pension fund, and as stock transfer agents, the defendant's agreement

to buy and sell electrical power in Illinois, and its ownership of pipelines connected to others located in Illinois, all in combination, evidence NIPSCO's "doing business" in this State. It has purposefully availed itself of the privilege of conducting the activities such that it is reasonable to require it to defend the present suit in our courts. Can there be little doubt that NIPSCO, should legal problems emerge regarding its Chicago banking activities, the generation of Illinois power, or the maintenance of Illinois pipelines, would not run to an Illinois courthouse to protect its interests in those Illinois activities? I think not. To believe otherwise would be to ignore commercial and legal reality. That being the case, NIPSCO has a concomitant responsibility to defend suits brought against it in the same forum courts. Such a price for actively engaging in business in Illinois "does not offend 'traditional notions of fair play and substantial justice, '" but is consistent with due process.

Since I disagree with the majority and would affirm the ruling of the circuit court, I respectfully dissent.