IDA HUCK, Special Adm'r of the Estate of Lawrence Huck, Deceased, *et al.*, Plaintiffs-Appellants, *v.* NORTHERN INDIANA PUBLIC SERVICE COMPANY *et al.*, Defendants—(Northern Indiana Public Service Company, Defendant-Appellee).

First District (2nd Division)   No. 82—2540

Opinion filed September 6, 1983.

Matthew I. Baker, of Karlin & Fleisher, Ltd., of Chicago (David A. Novoselsky, of counsel), for appellants.

Fohrman, Lurie, Sklar & Simon, Ltd., of Chicago (Miles J. Zaremski, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs Ida Huck and Johnny K. Hopkins sued for damages arising from the death of Lawrence Huck and from injuries sustained by Johnny K. Hopkins. The death and injuries occurred when an antenna being installed by Huck and Hopkins came into contact with power lines through which electrical current produced by defendant North-

ern Indiana Public Service Company (NIPSCO) was flowing. Plaintiffs sued NIPSCO and the manufacturer of the antenna. Defendant NIPSCO filed a motion to quash service of summons for lack of personal jurisdiction. The trial court granted defendant's motion and plaintiffs appeal.

On May 2, 1981, John K. Hopkins and Lawrence Huck were attempting to install a C.B. antenna on the roof of Huck's home in Winamac, Indiana. Huck was killed and Hopkins was injured when the antenna came into contact with power lines owned by the City of Winamac through which electrical current produced by defendant Northern Indiana Public Service Company was flowing. Plaintiffs brought suit in Illinois against NIPSCO and other defendants. NIPSCO filed a special and limited appearance and a motion to quash service of summons, claiming that the circuit court of Cook County had no personal jurisdiction over it because NIPSCO does not do business in Illinois. NIPSCO supported its motion with the affidavit of Mr. Horace Lyle, its vice-president for electrical production. By agreement of the parties, Mr. Lyle's deposition, which was taken in the case of Bethlehem Steel Corp. v. Northern Indiana Public Service Co. (N.D. Ill., Sept. 20, 1982), No. 82 C 118, was used concerning plaintiffs' response to defendant's motion to quash.

Plaintiffs base their contention that defendant is doing business in Illinois on several alleged "contacts" with this State. The following are the contacts relied upon by plaintiffs to satisfy the jurisdictional "doing business" requirement:

(1) Defendant buys and sells electrical power to Commonwealth Edison Co., an Illinois corporation, through a contract with that company and Commonwealth Edison Co. of Indiana, Inc., an unrelated Indiana corporation;

(2) Defendant buys 40-50% of its coal from Illinois coal fields and transports this coal to Indiana by seven unit coal trains, three of which are leased from an Illinois company and serviced and maintained in Illinois;

(3) Defendant uses two Chicago banks, through contractual arrangements, as depositories, disbursing agents for some of the utility's funds, as trustees under a mortgage on certain real estate owned by defendant and located in Indiana, as trustees of defendant's pension fund and as stock transfer agents;

(4) Defendant owns natural gas pipelines in Indiana which connect with interstate pipelines running between Illinois and Indiana and owned by entities independent of defendant, through which defendant receives gas from storage fields lo-

cated in Illinois; and

(5) Defendant uses Illinois television and radio stations for advertising purposes.

The trial court granted defendant's motion to quash, and plaintiffs appeal.

■ Plaintiffs contend that defendant's activities within Illinois are sufficient to constitute doing business, thus subjecting defendant to the personal jurisdiction of the Illinois courts under sections 2—204 and 2—208 of the Code of Civil Procedure. Ill. Rev. Stat. 1981, ch. 110, pars. 2—204, 2—208.

A finding that a corporation is doing business in Illinois generally requires that the corporation conduct business in Illinois "of such a character and extent as to warrant the inference that it has subjected itself to the jurisdiction and laws of Illinois." *Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1983), 112 Ill. App. 3d 879, 882, 445 N.E.2d 1303.

The standards to be used in applying the doing business doctrine were set forth by the Illinois Supreme Court in *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847. In *Cook*, the court stated that the doing business test was not to be equated with the mere satisfaction of the minimum contacts requirement under the due process clause of the fourteenth amendment to the United States Constitution. (87 Ill. 2d 190, 200-201; see *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203.) The court so ruled in order to maintain the distinction between the long-arm statute and the doing business standard and to avoid tying these rules to the ever-changing due process standards. 87 Ill. 2d 190, 201.

The court premised its examination of the defendant's activities under the doing business test as applied in Illinois with the statement that "[t]here is no all-inclusive test for determining whether a foreign corporation is doing business in this State." (87 Ill. 2d 190, 201.) Although there may be no such all-inclusive test, almost all Illinois cases determining the existence of personal jurisdiction over foreign corporations have based their findings upon the existence of factors such as offices or sales activities in Illinois. See, *e.g., Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857; *St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 52; *Hertz Corp. v. Taylor* (1959), 15 Ill. 2d 552, 155 N.E.2d 610; *American Hide and Leather Co. v. Southern Ry. Co.* (1923), 310 Ill. 524, 142 N.E. 200; *Maunder v. Dehavilland Aircraft of Canada, Ltd.* (1983), 112 Ill.

App. 3d 879, 445 N.E.2d 1303.

In these cases, there was continuous and permanent activity which is absent in the case at bar. Defendant does not maintain any offices or employees in Illinois, nor does it solicit Illinois business. In fact, soliciting business in Illinois would be pointless, because defendant is not authorized by the Illinois Commerce Commission to provide utility service to any portion of Illinois.

As for the contacts between defendant and Illinois listed above, these do not rise to the level of doing business. These contacts, along with several others, were recently considered by the United States District Court for the Northern District of Illinois in Bethlehem Steel Corp. v. Northern Indiana Public Service Co. (N.D. Ill., Sept. 20, 1982), No. 82 C 118, and found to be insufficient to confer jurisdiction over defendant.

The record in the instant case contains, as an exhibit attached by plaintiffs to their response to defendant's motion to quash, a copy of the deposition of defendant's vice-president for electrical production which was taken in connection with the *Bethlehem Steel* case. This deposition describes defendant's contacts with Illinois as of March 1982. The facts contained therein were the basis, in part, for the United States District Court's ruling in *Bethlehem Steel.*

Plaintiffs in the case at bar argue, based on facts elicited from the deposition, that defendant has maintained a continuous and ongoing business relationship with Illinois sufficient to confer personal jurisdiction over it under the doing business standard. Any analysis of this relationship would therefore be incomplete absent an examination of the United States District Court's consideration of the same facts in *Bethlehem Steel.* While Federal court decisions construing Illinois law are not binding on Illinois courts, they are nonetheless persuasive. *People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 480, 484, 368 N.E.2d 100.

The first contact alleged by plaintiffs is the agreement by which power could be bought and sold between defendant and Commonwealth Edison Company of Illinois. An earlier version of this contract was examined in *Stephens v. Northern Indiana Public Service Co.* (1980), 87 Ill. App. 3d 961, 409 N.E.2d 423, and found not to constitute doing business in Illinois. At the time of the *Stephens* case, the contract was an interconnection agreement between defendant and a second Indiana corporation whereby power generated in Illinois could be purchased by defendant from the second Indiana corporation, and power generated by defendant to the second Indiana corporation could be transmitted into Illinois. The *Stephens* court concluded that,

since no purchases were actually shown to have been made in Illinois (defendant conducted all transactions solely with the second Indiana corporation), no business was being conducted in Illinois.

This agreement, however, was altered in 1979, after the cause of action in *Stephens* arose, so that the court's analysis of the agreement in that decision is of no help in deciding the instant case absent a consideration of the 1979 changes. The *Bethlehem Steel* opinion is likewise of little assistance in resolving this issue because the plaintiff in that case failed to produce any evidence of the 1979 changes, leading the court to follow the *Stephens* analysis.

The only evidence contained in the record as to the current status of this agreement is the deposition of defendant's officer taken in *Bethlehem Steel*, plus an affidavit by that same officer. Paragraph 6 of the affidavit describes the interconnection agreement as follows:

"(6)(a) NIPSCO has an interconnection agreement with Commonwealth Edison Company (CE), an Illinois public utility company, and its wholly owned subsidiary, Commonwealth Edison Company of Indiana, Inc. (CECI). CECI is an Indiana corporation located in Indiana which is a generating and transmission electric utility. NIPSCO will on occasion buy, sell, or interchange power with CE which will utilize the CECI transmission facilities for delivery or receipt of this electric power within the state of Indiana.

(b) NIPSCO's physical plant, including electrical lines and related items which are devoted to and involved in said arrangement with CE is entirely within the state of Indiana. Although electrical current which might be supplied by NIPSCO to CE might move into Illinois on physical plant located in Illinois, all such physical plant is owned by a legal entity other than and independent of NIPSCO."

It is clear from this description that no substantial ongoing business contacts between defendant and Illinois exist as a result of this agreement. As the affiant has stated, defendant owns no physical plant in Illinois, and no Illinois transmission facilities are used for the delivery of power between Illinois and Indiana.

Plaintiffs argue that the facts are sufficient to satisfy the due process requirements of *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559, and *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, but, as we have noted above, the due process standard represents only the outer limits beyond which a State may not go to acquire jurisdiction over nonresidents. A State is free to set its own

limits in acquiring this jurisdiction within the perimeters of the due process clause. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197, 429 N.E.2d 847.) In Illinois, "doing business" is the standard, and we cannot say that defendant's activities under this interconnection agreement constitute doing business in Illinois.

The description of this agreement in the deposition of defendant's officer is very general, and does not disclose any substantially greater contacts with Illinois than were found by the *Stephens* court in the pre-1979 contract. Hence, we find no evidence in the record of any additional contacts between defendant and Illinois under the post-1979 agreement. The *Stephens* analysis of these facts is therefore dispositive. The interconnection agreement, even in its present form, does not rise to the level of doing business in Illinois.

Plaintiffs next argue that defendant's purchase of 40% to 50% of its coal from Illinois coal fields, and the transportation of that coal through Illinois by unit trains leased by defendant from a company with maintenance facilities in Illinois, constitutes doing business in Illinois. This arrangement was also addressed in *Bethlehem Steel,* and there has been no showing that the facts have changed since that opinion was handed down. In *Bethlehem Steel,* the court noted that the purchase of coal does not call for defendant's presence in Illinois in any manner whatsoever, and that defendant's leasing of three of its coal trains from a company whose maintenance facilities happen to be located in Illinois does not reflect any ongoing activity on defendant's part in Illinois. Bethlehem Steel Corp. v. Northern Indiana Public Service Co. (N.D. Ill., Sept. 20, 1982), No. 82 C 118, slip op. at 10.

Defendant's banking activities in Illinois were examined in both *Stephens* and *Bethlehem Steel* and were found not to constitute doing business in Illinois. In *Stephens,* the court stated: "The banking activities carried on in Chicago do not produce revenues for defendant; they are not of the type of business for which the corporation was organized and are incidental to its main operation." (*Stephens v. Northern Indiana Public Service Co.* (1980), 87 Ill. App. 3d 961, 970.) The court found that these activities could not be classified as a substantial and continuing part of defendant's business in Illinois so as to make defendant a "resident" for jurisdictional purposes. 87 Ill. App. 3d 961, 970.

Defendant's storage of natural gas in Illinois storage fields and its transportation of that gas by pipeline into Indiana were likewise addressed in both *Stephens* and *Bethlehem Steel.* The above mentioned deposition of defendant's vice-president for electrical production re-

veals that defendant did not own any gas stored in Illinois but merely had a right to obtain gas from the Illinois storage fields, which gas would become defendant's only upon being brought out and injected into defendant's pipelines in Indiana. Additionally, defendant does not own any pipeline in Illinois. The *Stephens* court stated:

"Nor can the connection of its [defendant's] intrastate pipeline in Indiana with an interstate pipeline running through Illinois be deemed a purposeful activity related to the forum State. The interstate pipeline no doubt runs through almost every State in the union-would that be a 'contact' in each of those States sufficient to assert jurisdiction there? We think not." 87 Ill. App. 3d 961, 969.

Plaintiffs' final alleged contact is defendant's use of Chicago television and radio stations to advertise. Of this it is sufficient to say that, because defendant is not authorized to provide services in Illinois, these advertisements cannot be intended to solicit business in Illinois. Defendant has alleged that these advertisements are used only to reach its customers in Indiana, and plaintiffs have produced no evidence nor made any practical argument to the contrary. See Bethlehem Steel Corp. v. Northern Indiana Public Service Co. (N.D. Ill., Sept. 20, 1982), No. 82 C 118, slip. op. at 11.

Plaintiffs argue that "it would be physically impossible for [defendant] to conduct its business without the use and enjoyment of this jurisdiction"; however, this is not the standard to be used in determining the existence of *in personam* jurisdiction in Illinois. The standard is doing business, and we find no evidence in the record that defendant is doing business on a continuing and permanent basis in Illinois.

■ We also consider the fact that Illinois has no significant relationship to the subject matter of the case at bar. The burden on the defendant of litigating in Illinois should be considered in light of Illinois' interest in adjudicating the dispute. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564.) Plaintiffs' cause of action arises from events occurring solely in Indiana, and any witnesses or evidence in the case will be found in Indiana. Thus, as a practical matter, Illinois is not sufficiently interested in this litigation to warrant overruling defendant's objection to jurisdiction. See *Stephens v. Northern Indiana Public Service Co.* (1980), 87 Ill. App. 3d 961, 970, 409 N.E.2d 423; Bethlehem Steel Corp. v. Northern Indiana Public Service Co. (N.D. Ill., Sept. 20, 1982), No. 82 C 118, slip op. at 12.

In sum, because defendant maintains no offices in Illinois, solicits

no business in Illinois and has no employees, agents or customers in Illinois, it cannot be said to be doing business here. It would be neither reasonable or fair to require defendant to defend this litigation in Illinois. We therefore find that the Code of Civil Procedure affords the circuit court of Cook County no basis for asserting jurisdiction in the instant case.

The judgment of the circuit court is affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.